Submitted January 17, 2013, remanded for resentencing; otherwise affirmed January 23, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SAMUEL RAY CAIN,
aka Samuel R. Cain,
*Defendant-Appellant.*

Multnomah County Circuit Court
090532142; A145956

320 P3d 600

Peter Gartlan, Chief Defender, and Morgen E. Daniels, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General, and Samuel A. Kubernick, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Nakamoto, Judge, and De Muniz, Senior Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Following a bench trial, defendant was convicted of five counts of first-degree theft, ORS 164.055, for improperly obtaining unemployment benefits. The court sentenced defendant to supervised probation and ordered him to pay restitution to the Oregon Employment Department (the department) in the amount of $26,004 plus 12 percent interest. Defendant now appeals the judgment, arguing that the trial court erred when it (1) admitted an exhibit over his hearsay objection; (2) denied his motion for a continuance; (3) added 12 percent interest to the restitution award; and (4) denied his motion for judgment of acquittal. We reject defendant's second and fourth assignments of error without discussion. Additionally, as explained below, we conclude that defendant's first assignment of error is without merit. However, as to defendant's third assignment of error, we agree that the trial court erred in adding 12 percent interest to the restitution award. Accordingly, we remand for resentencing; otherwise, we affirm.

Defendant was prosecuted for first-degree theft after the department discovered that he had under-reported his earnings in connection with his unemployment benefits claims. Specifically, defendant had failed to include in his reported earnings the gratuities he had earned working as a banquet server for the Hilton Hotel (the Hilton) in Portland.[1] Due to that under-reporting, defendant received unemployment benefits in excess of what he would have been entitled to if he had accurately reported his earnings. After a bench trial, the court found defendant guilty of five counts of first-degree theft, and ordered him to pay the department restitution in the amount of $26,004 plus 12 percent interest.

In his first assignment of error, defendant contends that the trial court erred in admitting the state's Exhibit 1 because it contained inadmissible double hearsay. In reviewing a trial court's evidentiary ruling on the admissibility of a hearsay statement, we apply a two-part standard of review. *State v. Cook*, 340 Or 530, 537, 135 P3d 260 (2006). In the first part of that review, we "will uphold the trial court's

---

[1] Evidence at trial also indicated that defendant under-reported his hours in addition to under-reporting his earnings.

preliminary factual determinations if any evidence in the record supports them." *Id.* In the second part, we review "the trial court's ultimate legal conclusion, as to whether the hearsay statement is admissible under an exception to the hearsay rule, to determine if the trial court made an error of law." *Id.* With that standard of review in mind, the facts relating to the admission of Exhibit 1 are as follows.

Exhibit 1 is a computer print-out of a chart prepared by the department that lists information about defendant's claims for each week that he claimed unemployment benefits, including: (1) the earnings that defendant reported to the department, (2) defendant's earnings as reported by his employer, the Hilton, (3) the amount of benefits defendant received, (4) the amount of benefits defendant should have received based on the earnings the Hilton reported, and (5) the amount of benefits defendant was overpaid as a result.

The state sought admission of Exhibit 1 through the testimony of Younger, the department's fraud investigator who prepared the chart and investigated defendant. Younger testified that she created the chart using a computer program in which she entered the name of the employer, the weeks in which defendant claimed benefits, how much defendant reported earning, and defendant's earnings as reported by his employer. The amounts in the last three columns of the chart—the benefits defendant received, the correct benefits amount, and the benefits overpaid—were calculated by a computer program.

Younger testified that employers report their employees' earnings to the department in quarterly earnings reports that are required as part of the employers' unemployment tax obligations. Younger said that the department collects and maintains employer-reported earnings information from these quarterly reports, and that, in this case, the initial information about defendant's employer-reported earnings came from quarterly reports filed by the Hilton. She also testified that the Hilton files quarterly reports with the department in the Hilton's ordinary course of business. She went on to explain that, in addition to storing information from the quarterly reports, the department uses that

information to monitor unemployment claims. Specifically, Younger testified that the department uses a computer formula to compare the earnings reported by the employee to those reported by his or her employer. If a discrepancy exists between those reported earnings, the department sends an audit letter to the employer requesting information about the employee's hours, earnings, and wages for that period of time.

Younger testified that, in this case, the Hilton's quarterly reports listed a substantially higher amount of earnings for defendant than defendant had reported to the department. Because of that discrepancy—and pursuant to the department's audit process—the department sent an audit letter to the Hilton requesting defendant's earnings information. The Hilton filled out and returned the audit letter to the department, and it was later admitted at trial as Exhibit 5. Younger testified that the department enters the information from the audit letter into its computer system and then forwards the letter to an investigator, in this case, to her. Younger also testified that she used the information in the audit letter in her investigation of defendant and in filling out Exhibit 1. Younger said that, in addition to the audit letter, she requested the Hilton's payroll records to confirm that what the Hilton reported was accurate—a step Younger said was part of the department's investigation process. Finally, Younger confirmed that the Hilton reports its employees' earnings information in the course of its business with the department, that the department keeps that employer-reported data in the department's computer system, and that the tabulations she did were to confirm that the data reported to the department was correct.

The state also called a Hilton payroll coordinator, Shew, to testify at trial. Shew testified that the Hilton provided the department with accurate information about defendant's weekly earnings in the audit letter based on the Hilton's payroll records.

The trial court admitted Exhibit 1 over defendant's hearsay objection. It concluded that the exhibit was admissible as a summary of underlying business records under OEC 1006, as well as a business record under OEC 803(6).

On appeal, defendant renews his hearsay objection, contending that although part of Exhibit 1 was admissible as a business record of the department under OEC 803(6), in accordance with Younger's foundational testimony, the critical part of Exhibit 1—the column headed "Employer Reported Earnings"—was inadmissible double hearsay consisting of statements from the Hilton. Defendant asserts that Younger could not lay an appropriate foundation for the Hilton's statements concerning defendant's earnings to qualify them as a business record or as a summary of business records because she "was not a Hilton employee, did not maintain Hilton records, had no personal experience of [the] Hilton's payroll documentation practices except in her capacity as an investigator at the employment department, and had nothing to do with tabulating [the] Hilton's quarterly earnings reports."

The state responds that, because the department has a duty to accurately investigate defendant's unemployment claims, and, because the Hilton had a duty to accurately report defendant's earnings to the department, the entirety of Exhibit 1 was admissible as a business record under OEC 803(6). The state further argues that no separate foundation was needed from a Hilton employee because the Hilton had a legal duty to provide accurate earnings information to the department and there was nothing about the source of data underlying the "Employer Reported Earnings" column, or the circumstances of its preparation, that indicated a "lack of trustworthiness."

Thus, the issue we decide is whether the Hilton's statements of defendant's earnings rendered Exhibit 1 inadmissible based on hearsay. We agree with the state that Exhibit 1 and the information contained in the "Employer Reported Earnings" column qualified as a business record under OEC 803(6).[2]

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted, and is generally inadmissible unless it qualifies under a hearsay exception

---

[2] Because we conclude that Exhibit 1 was properly admitted under OEC 803(6), we need not reach the issue of whether it was properly admissible as a summary under OEC 1006.

or is excluded from the category of hearsay. *See* OEC 801(3) (defining hearsay); OEC 802 (stating that hearsay is not admissible except as provided in OEC 801 to 806); OEC 803 - 804 (setting forth exceptions to the hearsay rule); OEC 801(4) (setting forth exclusions to category of hearsay). The "business records exception" to the hearsay rule allows admission of:

> "A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method [or] circumstances of preparation indicate lack of trustworthiness."

OEC 803(6).[3] Such records are admissible, despite being hearsay, because of their "unusual reliability," which is "variously ascribed to the regular entries and systematic checking which produce habits of precision, to actual reliance of the business upon them, and to the duty of the record keeper to make an accurate record." Legislative Commentary to OEC 803, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 803.06[2], 806 (6th ed 2013). However, statements in a business record that come from persons outside the business generally are not afforded the same presumption of reliability. As the Legislative Commentary to OEC 803(6) explains, "[i]f the supplier of the information does not act in the regular course of business * * * an essential link is broken: the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail." *Id.*

This so-called "duty to report" requirement originates from the leading case on the issue, *Johnson v. Lutz*, 253 NY 124, 170 NE 517 (1930). *See Mayor v. Dowsett*, 240 Or 196, 226, 400 P2d 234 (1965) (discussing *Johnson*). In

---

[3] That subsection defines the term "business" to include "business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit." OEC 803(6).

*Johnson*, the New York Court of Appeals considered whether a police accident report containing hearsay statements from bystanders was admissible under its business records exception and concluded that it was not admissible as a business record. The court explained that the purpose of the business records exception was to allow admission of business records

> "without the necessity of calling as witnesses all of the persons who had any part in making it, provided the record was made as a part of the duty of the person making it, *or on information imparted by persons who were under a duty to impart such information.* * * * It was not intended to permit the receipt in evidence of entries based on *voluntary* hearsay statements made by third parties not engaged in the business *or* under any duty in relation thereto."

*Johnson*, 253 NY at 128 (emphasis added). The Oregon Supreme Court followed *Johnson* in *Snyder v. Portland Traction Company*, 182 Or 344, 351, 185 P2d 563 (1947), and affirmed the exclusion of a police report reciting what others had told the officer who made the report. *Accord Miller v. Lillard*, 228 Or 202, 211-12, 364 P2d 766 (1961) (affirming exclusion of a report by a livestock officer for a state agency that contained hearsay observations and opinions by others).

Under the rationale in *Johnson*, for a business record to be admissible, "not only must the entrant be under a business duty to record the event, but the informant must be under a contemporaneous business duty to report the occurrence to the entrant as well." *Matter of Leon RR*, 48 NY 2d 117, 122, 397 NE 2d 374 (1979). If the supplier of the information and the person recording the information are both acting in the regular course of business, then the multiple levels of hearsay are excused under the business records exception. Kirkpatrick, *Oregon Evidence* § 803.06[3][f] at 811; *see also* OEC 805 ("Hearsay included within hearsay is not excluded under [OEC 802] if each part of the combined statements conforms with an exception set forth in [OEC 803] or [OEC 804].").

Although the "duty to report" requirement expressed in *Johnson* is not found in the text of OEC 803(6), it is considered "a traditional requirement of the business records exception," and is recognized in the Legislative Commentary

to OEC 803, as well as in Oregon case law.[4] Kirkpatrick, *Oregon Evidence* at § 803.06[3][e] at 811. For example, in *Mayor*, 240 Or at 224-31, the Supreme Court considered the application of the "duty to report" requirement to information in a hospital record that had been provided by a third party. In that case, the plaintiff challenged the trial court's admission of part of her hospital record at trial on the basis that it contained statements from her husband about her medical history. In considering whether the record was admissible under the Oregon Uniform Business Records as Evidence Act, *former* ORS 41.680 to 41.710, *repealed by* Or Laws 1981, ch 892, § 98, the court concluded that,

> "If, as the cases hold, a record of a relevant medical history obtained from a patient is so far deemed to be made in the regular course of the business of a hospital as to justify its admission in evidence, we are unable to see any reason why such a record obtained from the husband of a patient who accompanies his gravely ill wife to the hospital, should not likewise be admissible. * * * If it should be argued that the husband's statement was not made 'in pursuance of any duty' owing by him, *Johnson v. Lutz*, supra, the same argument might be urged against receiving the patient's statement. But if the statement by the patient is received on the theory that she had a duty to make it, then the circumstances may be such as to justify the judge in finding a similar duty on the part of the husband."

*Mayor*, 240 Or at 229.

In this case, the information in the "Employer Reported Earnings" column of Exhibit 1 did not originate with the department; rather, the information in that column originated from an outside source, the Hilton. However, as explained above, information in a business record obtained from an outside source will be given the presumption of reliability if the person or entity providing that information did so in the ordinary course of business or pursuant to a duty owed to the receiving business. Such was the case here.

First, there was evidence that the payroll information the department received from the Hilton was transmitted

---

[4] The Commentary also notes that the "duty to report" requirement has been recognized by federal courts interpreting FRE 803(6), the federal counterpart to OEC 803(6). Kirkpatrick, *Oregon Evidence* at § 803.06[2] at 811.

in the Hilton's ordinary course of business and pursuant to the Hilton's duty toward the department. Younger testified that employers are required to file quarterly reports with the department, and that they do so in the ordinary course of business. Indeed, employers in Oregon are under a legal duty to maintain payroll records, to make quarterly reports of their employees' wages and hours, and to do so accurately. *See* ORS 657.660(1) ("Every employing unit shall keep true and accurate records of all persons employed by it and such records of hours worked, wages paid and other statistics as prescribed by the Director of the Employment Department for the administration of this chapter.");[5] OAR 471-031-0005(1) ("Every employing unit, as defined by ORS 657.020, shall maintain a payroll record of individuals performing services for it."); OAR 471-031-0085(1) ("[E]ach employer shall file an employer's quarterly report of employees' wages and hours of work on forms as required by ORS 657.571 * * *.").

Additionally, as for the information the Hilton reported to the department in the audit letter, Hilton employee Shew testified that it is the Hilton's responsibility to fill out the audit letter, that the Hilton filled out the audit letter using time cards that are kept in the ordinary course of the Hilton's business, and that the information reported in the audit letter was accurate. Furthermore, as the state correctly points out in its brief, administrative rules require employers like the Hilton to provide payroll information to the department upon request. *See* OAR 471-031-0005(3) - (4) (employers "are required to keep payroll records * * * for a period of three calendar years, and furnish such information to the Employment Department upon demand" and "shall furnish on request a weekly payroll record for the base year of any employee * * * who has filed a claim for benefits"). Therefore, in reporting defendant's earnings information to the department, the Hilton was acting in its ordinary course of business and was under a duty to accurately report such information. Unlike the third parties supplying information

---

[5] "Employing unit" is defined in ORS 657.020, as relevant here, as "[a]ny individual or type of organization, including any * * * corporation * * * who has or had in its employ one or more individuals performing services for it within this state."

in the reports at issue in *Johnson, Snyder,* and *Miller,* the Hilton was not volunteering defendant's earnings information to the department, but rather was under a legal duty to provide the information and to do so accurately. Thus, the reports to the department possess the requisite indicia of reliability or trustworthiness required for admission under the business records exception.

The reliability of the Hilton's reports is bolstered by the fact that the department maintains—and relies upon—the information received from employers in the ordinary course of its business. Younger's testimony established that the information received from the Hilton, regardless of whether it was in the form of the quarterly reports, audit letter, or payroll records, was incorporated into the department's records and kept in the department's ordinary course of business. Moreover, Younger testified that the department uses information supplied by employers to identify discrepancies between what employees report and what they are actually earning, and that discrepancies discovered through that process trigger an audit. Thus, the department relied on the information provided by the Hilton in conducting its regular course of business, namely, tracking and investigating unemployment claims. Because information in a business record that was supplied by a third party is admissible if the third party was acting pursuant to a duty or in the ordinary course of business when supplying the information, the trial court correctly overruled defendant's objection that the state failed to establish an adequate foundation for the admission of Exhibit 1 in its entirety as a business record. Accordingly, we reject defendant's first assignment of error.

We now turn to defendant's third assignment of error. In the part of the judgment addressing monetary terms, the trial court included the following provision: "Add 12% interest to restitution total." Defendant argues that the trial court erred when it ordered him to pay 12 percent interest on the $26,004 ordered as restitution. Defendant contends that the plain text of the restitution statute excludes post-judgment interest from the definition of "economic damages" that can be awarded as restitution. Although defendant acknowledges that he failed to preserve this argument below, he argues that we should review it as plain error.

The state does not dispute defendant's analysis of the restitution statute, and, citing *State v. White*, 249 Or App 166, 274 P3d 313 (2012), concedes that it was error for the court to impose 12 percent interest on the restitution award. Nonetheless, the state argues that we should not exercise our discretion to correct that error in light of the purposes of the preservation requirement. For the reasons below, we agree with defendant that it was plain error for the trial court to award interest as restitution and exercise our discretion to correct that error.

Ordinarily, for an error to be reviewable on appeal, the party asserting the error must have preserved the issue in the lower court. ORAP 5.45(1); *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380, 823 P2d 956 (1991). However, an appellate court "may consider an error of law apparent on the record." ORAP 5.45(1). Such an error (1) is one of law; (2) must be "apparent," meaning "the legal point is obvious, not reasonably in dispute"; and (3) must "appear on the face of the record," meaning that the court "need not go outside the record or choose between competing inferences to find it." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). All three requirements are satisfied in this case. The question of what is awardable as restitution in a criminal case is a question of law, and, given that the judgment orders defendant to pay interest as part of the restitution award, we need not go outside the record or choose between competing inferences to find the error in this case. Finally, whether interest may be awarded as part of a victim's restitution is not "reasonably in dispute." *Id.*

Again, the state does not dispute that the plain language of the restitution statute excludes post-judgment interest from the definition of "economic damages" and concedes that the court erred. Although a party's concession is not dispositive in deciding if an error is obvious or not in dispute, it is something to consider. *See State v. Jones*, 129 Or App 413, 416, 879 P2d 881 (1994) ("Particularly in view of the state's concession of error on this legal point, we believe the error here is not reasonably in dispute."). The state correctly concedes the error given our decision in *White*.

Under the restitution statute, when a person is convicted of a crime that has resulted in economic damages and the court finds that a victim suffered economic damages, "the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court." ORS 137.106(1)(a). For purposes of restitution, "economic damages" are "objectively verifiable monetary losses." ORS 31.710(2)(a); ORS 137.103(2)(a) ("Economic damages" has the meaning given in ORS 31.710, except that it does not include future impairment of earning capacity). In *White*, on facts similar to this case, we held that the trial court erred in ordering the defendant, who pleaded guilty to theft after improperly claiming unemployment benefits, to pay 12 percent interest as part of the restitution award to the department. We agreed with the state's concession that the interest that the department would be entitled to receive in a civil cause of action was not an "objectively verifiable monetary loss" resulting from the defendant's actions. 249 Or App at 168.

In light of our decision in *White*, it is undisputable that post-judgment interest is not "economic damages" under ORS 31.710(2)(a) and, therefore, cannot be lawfully imposed as restitution. Interest on a restitution award is not an "objectively verifiable monetary loss" that the victim suffered as a result of the defendant's criminal actions. Rather, post-judgment interest is a "penalty for delayed payment on the judgment." *Highway Comm. v. DeLong Corp.*, 275 Or 351, 358, 551 P2d 102 (1976) (internal quotation marks omitted). Therefore, the trial court plainly erred in ordering defendant to pay interest as restitution.

We next consider whether to exercise our discretion to correct the error. *Ailes*, 312 Or at 382. In that regard, we consider, among other things,

"the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in

another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error."

*Id.* at 382 n 6. The state argues that we should not exercise our discretion to correct the error because defendant had an opportunity to object to the addition of interest, and, had he objected, the court could have considered, and possibly corrected, the error. Nonetheless, we conclude that this is an appropriate case in which to exercise our discretion to correct the error.

The state's concession of error weighs in favor of exercising our discretion to correct the trial court's error; the state has no legitimate interest in requiring defendant to pay money he is not legally obligated to pay. The ends of justice would not be served by refusing to correct an error that both parties acknowledge. *Jones*, 129 Or App at 416-17. Moreover, adding 12 percent interest to the restitution award will significantly increase the amount of defendant's repayment obligation. Given those factors, we conclude that this is an appropriate case in which to exercise our discretion to correct unpreserved error; accordingly we remand for resentencing.

Remanded for resentencing; otherwise affirmed.