Argued and submitted February 27, affirmed June 1, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KELLY LEE EDMONDS,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR1400136; A158854

398 P3d 998

Kristin A. Carveth, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Shorr, Judge, and Linder, Senior Judge.

## LINDER, S. J.

Defendant appeals from a judgment of conviction for rape in the first degree, ORS 163.375, challenging the trial court's admission of a short portion of a transcript under the hearsay exception for past recollection recorded, OEC 803(5). The state concedes that the evidence was not admissible on that basis, but argues that the trial court's ruling was nevertheless correct because the transcript was admissible under the hearsay exception for business records, OEC 803(6). As we will explain, we accept the state's concession, and we conclude that we should exercise our discretion to affirm on the alternative basis proffered by the state. We therefore affirm.

We begin by relating the facts and procedural events pertinent to defendant's claim of error. Defendant was charged with raping a five-year-old girl sometime in 1994 or 1995, while she was staying in his home where his wife operated a daycare business. Defendant's theory at trial was that the victim, who was 25 years old at the time of trial, had formed a false memory of the event and was confusing it with sexual abuse committed by her stepfather, which started when she was seven years old. To rebut that defense of "recent fabrication," the state sought to prove that the victim made statements and disclosures, both at the time of the rape and in the years that followed, that were consistent with her testimony describing the rape.[1]

At issue here is evidence of a disclosure that the victim made in 2002, when two deputy sheriffs—Detective Delehant and Detective Clinton—interviewed the victim to determine if she was being sexually abused by her stepfather. During that interview, the victim related an instance of prior abuse that was consistent with her claim at trial that defendant had raped her while she was in daycare at his home. Delehant, for reasons that are not a matter of record, was not available to testify. Clinton, who was available as a witness, did not recall all the details of the 2002 interview

---

[1] Under OEC 801(4)(a)(B), a statement is not hearsay if it is consistent with a witness's testimony and "is offered to rebut an inconsistent statement or an express or implied charge against the witness of recent fabrication or improper influence or motive[.]"

and, in particular, did not recall the victim's disclosure of the earlier abuse. The state therefore intended to rely on a transcript of the interview that was part of the police file on the stepfather's case.

Defendant filed a motion *in limine* seeking to exclude the transcript on hearsay grounds.[2] The state responded that the transcript was admissible as a past recollection recorded, given Clinton's inability to recall the victim's disclosure. Defendant disputed its admissibility on that ground, pointing to the requirement in OEC 803(5) that a past recollection recorded must be "shown to have been made or adopted by *the witness* when the matter was fresh in the memory of the witness and to reflect that knowledge correctly."[3] (Emphasis added.) Defendant argued that Delehant had been responsible for having the transcript of the interview prepared and that Clinton, the only one of the two to be called as a witness, had neither prepared nor personally reviewed the transcript for accuracy after the interview. As a result, according to defendant, the state could not satisfy the foundation needed for the past recollection recorded exception to the hearsay rule.

The state, for its part, did not dispute that Delehant, and not Clinton, had been responsible for preparing and reviewing the transcript. But the state maintained that it could lay the requisite foundation for the exception through Clinton's testimony. According to the state, Clinton could testify to the regular procedures followed by the sheriff's office for victim interviews, which was to record the interview and then prepare a transcript of that recording that an officer present for the interview checked for accuracy. The transcript was then made a part of "their business record." In this case, it was undisputed that Delehant had signed

---

[2] Defendant's trial objection challenged the transcript as having "two layers" of inadmissible hearsay. The first layer, defendant argued, was the victim's statements themselves. The second layer was the transcript relating those statements. The state argued that the victim's statements—the first layer—were admissible as a report of abuse under OEC 803(18a) or as a prior consistent statement under OEC 801(4)(a)(B). The trial court agreed. On appeal, defendant has abandoned his challenge to the victim's statements. The only issue before us is whether the transcript itself—the second layer—falls within an exception to the hearsay rule.

[3] The full text of OEC 803(5) is set out later in this opinion.

the transcript and the transcript had been placed in the file of the case that he was investigating at the time. The state urged that Clinton's description of the regular procedures followed in the sheriff's office, coupled with Delehant's signature on the transcript, established that Delehant had "made or adopted" the transcript when the details of the interview were fresh in his mind, satisfying the requirements of the past recollection recorded exception to the hearsay rule.

The trial court agreed, concluding that the state's proffer "is likely to be a sufficient foundation" to admit the evidence as a past recollection recorded. The court therefore denied defendant's pretrial motion to exclude the evidence, while noting that the defense was free to "make its objection again" if the state did not lay the foundation that it had represented it would lay.

At trial, the state called Clinton as a witness. Although Clinton recalled the 2002 interview of the victim generally, he did not recall the victim disclosing the prior abuse. As a predicate to asking Clinton to read a portion of the transcript of the 2002 interview, the state established that Clinton, who had been employed by the Clackamas County Sheriff's Office for 27 years and was a detective for 20 of those years, knew the procedures followed by the sheriff's office for making and keeping records of victim interviews. Clinton explained that, at the time of the 2002 interview, the normal practice for an officer investigating a criminal case was to make a recording of an interview using a cassette recorder. The officer who made the recording would then submit it to the records division, which in turn would prepare a written transcript of the recording and return both the transcript and the audio recording to the officer. The officer would check the transcript for accuracy and identify any needed corrections while the interview was fresh in the officer's mind. After that review, the audio recording and the transcript would be filed in the case file. Once the case being investigated was "over," the audio recording usually was destroyed due to space limitations, but the written transcript was retained in the file.

In this instance, Delehant, not Clinton, recorded the 2002 interview with the victim. Clinton therefore had

no role in preparing or reviewing the transcript of the 2002 interview; those tasks were Delehant's responsibility. Clinton therefore could not say whether Delehant in fact had reviewed the transcript for accuracy while the interview was fresh in Delehant's memory. Consistently with its policies, the sheriff's office had retained the written transcript of the interview in its files. In preparation for trial in this case, Clinton had reviewed the transcript, but that review did not refresh his memory of the victim's statements about the prior abuse. However, based on what he could independently recall of the interview, and given the office's regularly followed procedures, Clinton did not doubt the transcript's accuracy.

After eliciting that testimony from Clinton, the state began to ask the detective about the contents of the transcript. Defendant renewed his objection based on a lack of foundation; the trial court overruled it. Clinton then read a short portion of the transcript to the jury in which the victim told the detectives that she had been touched in a sexual way at a "babysitter's" when she was much younger. One of the detectives asked if the touching had happened in Oregon, and the victim confirmed that it had. The detectives did not ask her any other questions about that disclosure, and no other portions of the 2002 interview transcript were presented to the jury in the trial in this case.

On appeal, defendant renews his argument that Clinton's testimony did not provide the foundation required by OEC 803(5) for past recollection recorded. Under OEC 803(5), otherwise inadmissible hearsay may be admitted in evidence when it is

> "[a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, *shown to have been made or adopted by the witness when the matter was fresh in the memory of the witness and to reflect that knowledge correctly.* If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party."

(Emphasis added.) Defendant urges that the rule was not satisfied because it requires "the witness" to make or

adopt the transcript of the recording. Here, the witness was Clinton, who "reviewed the transcript at trial, more than ten years after it was prepared, when he admittedly had no memory whatsoever of the exchange at issue." The state did not call Delehant as a witness, who had been responsible for recording the interview, having it transcribed, and reviewing it for accuracy.

The state concedes that defendant is correct: "Because Detective Clinton did not make the transcript or adopt it close in time to the interview, the transcript was not admissible under OEC 803(5)." The state's concession is well-taken, and we accept it. By its terms, the rule requires "the witness" whose memory is lacking to be the person who, when the matter was fresh in the witness's mind, made or adopted the record to be admitted as evidence. That requirement is consistent with the common law origins of the rule:

> "By the middle 1600s, it had become customary to permit a witness to refresh a failed memory by looking at a written memorandum and to testify from a then-revived memory. Frequently, while examination of the writing did not revive memory, the witness *recognized the writing as one that he or she had prepared and was willing to testify on the basis of the writing that the facts recited in it were true.* By the 1700s, this later procedure was also accepted as proper[.]"

Kenneth S. Brown, 2 *McCormick on Evidence* § 279, 417 (7th ed 2013) (emphasis added; footnote omitted). Said another way, "[i]n effect, the contents of the document take the place of what would have been the witness's live testimony if the witness could still remember." Barbara E. Bergman & Nancy Hollander, 6 *Wharton's Criminal Evidence* § 72:1, 593 (15th ed 2001). The text of OEC 803(5) reflects that traditional rationale by requiring a showing that the record was made or adopted "by the witness" while the witness's memory of the matter was fresh, and that the witness's memory now cannot be revived.[4] As defendant urges, and the state

---

[4] The legislature viewed OEC 803(5) to be in keeping with the traditional exception for a past recollection recorded that had been "generally recognized" and "long favored" by federal and state courts alike. Laird C. Kirkpatrick, *Oregon Evidence* § 803.05[2], 802 (6th ed 2013) (setting out text of legislative commentary).

concedes, the state might have been able to satisfy the rule's requirement by calling Delehant as a witness, but it could not do so through Clinton. The trial court's ruling to the contrary was error.

The state argues that we nevertheless should affirm the judgment, reasoning that the transcript was admissible as a business record under OEC 803(6). In so arguing, the state invokes the familiar "right for the wrong reason" doctrine. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (synthesizing requirements of doctrine). Under that doctrine, for an appellate court to affirm a trial court ruling on a ground that the trial court did not consider, the record must satisfy two conditions. First, "the facts of record [must] be sufficient to support the alternative basis for affirmance." *Id.* at 659. Second, "the record [must be] materially * * * the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below." *Id.* at 660.

To assess the first of the two conditions for the record—whether it is sufficient to support the alternative basis for affirmance—we begin by examining OEC 803(6), which authorizes the admission of

> "[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method [or] circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this subsection includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

As codified in OEC 803(6), the business records exception to the hearsay rule extends to records of all kinds and forms, regularly made and kept by a "business," which is defined broadly to include associations, occupations, professions, and "calling[s] of every kind." *See generally Brown v.*

*J. C. Penney Co.*, 297 Or 695, 702-03, 688 P2d 811 (1984) (applying business records exception to police department records under former statute as well as OEC 803(6)). For a record to fit within the exception, the proffering party must show that the record (1) was made at or near the time of the event or matter being memorialized; (2) by or from information transmitted by a person with knowledge and a duty to report; (3) pursuant to a regular activity of the business; and (4) was kept in the course of a regular conducted activity of the business. *See* Laird C. Kirkpatrick, *Oregon Evidence* § 803.05[3][a], 809 (6th ed 2013) (summarizing foundational requirements of rule).[5] Those foundational requirements can be satisfied through the testimony of a "qualified witness." OEC 803(6). The witness does not have to be the custodian of the records. *State v. Cappelman*, 10 Or App 176, 180, 499 P2d 1372 (1972). Neither does the witness have to be the person who made the record or someone otherwise involved in its preparation. *Holbrook v. Precision Helicopters, Inc.*, 162 Or App 538, 544, 986 P2d 646, *rev den*, 329 Or 527 (1999).

In assessing whether the requirements of OEC 803(6) are satisfied on this record, the specific question before us is whether Clinton was a qualified witness whose testimony met the foundational requirements of the rule. We earlier recited Clinton's testimony in detail, along with the colloquy during the pretrial hearing in which the trial court ruled that Clinton could testify to the contents of the transcript, if the state laid the proper foundation. At the pretrial hearing, the state had represented that Clinton would describe the procedures regularly followed by the sheriff's office for keeping records of victim interviews, and the state alluded to the business records exception by characterizing the sheriff's office as creating transcripts for "their business

---

[5] The requirement that the person with knowledge have "a duty to report" is not express in OEC 803(6). Kirkpatrick points out that a duty to report is a traditional requirement for the business records exception, one that the legislature, in adopting OEC 803(6), intended to retain. Kirkpatrick, *Oregon Evidence* § 803.05[3][a] at 809. We have agreed, concluding that the duty to report is an implicit requirement of the rule. *State v. Cain*, 260 Or App 626, 635, 320 P3d 600 (2014) (based on text, legislative history, and preexisting case law, business records exception under OEC 803(6) requires that report be made by or based on information provided by person with knowledge who has duty to report).

record." The state then laid that foundation at trial, consistently with its pretrial representation. In effect, what the state attempted to do, and what the trial court permitted it to do, was to rely on the regularity of the recordkeeping procedures that the sheriff's office followed to establish circumstantially that Delehant had reviewed the transcript for accuracy when the interview was fresh in his mind.

As we have discussed, that was not a sufficient foundation for the past recollection recorded exception under OEC 803(5) because, by its terms, that rule requires that "the witness" be shown to have made or adopted the record. The witness here was Clinton, who had no role in reviewing the transcript, not Delehant, who did.

But Clinton's testimony did track with what is required to lay the foundation for a business record under OEC 803(6). Clinton testified that, from his veteran experience and training as a detective in the Clackamas County Sheriff's Office, he knew the procedures that the office regularly followed for recording and preserving victim interviews. Pursuant to those procedures, an officer charged with investigating a case routinely would make an audio recording of the interview and would give that audio recording to the records division, where it would be transcribed. The records division next would return both the written transcript and the audio recording to the officer, who would review the transcript for accuracy and have any needed corrections made while the interview was fresh in the officer's mind. At that point, both the audio recording and the written transcript would be filed in the appropriate case file, where the written transcript would be kept indefinitely, while the audio recording usually would be destroyed once the case was closed.

The transcript of the 2002 interview in this case, which was placed in the record, has all the earmarks of having been prepared pursuant to the procedures that Clinton described.[6] It was prepared under Delehant's name in the form of a "Report Regarding: Witness/Victim Statement."

---

[6] A copy of the report containing the transcript was made an exhibit in the record for purposes of authenticating the document; it was not given to the jury.

That report is dated August 15, 2002, which was the same as the date of the interview. The report begins by identifying: the case number; the crime being investigated; the time of the interview; the victim's name, date of birth, and contact information; and who was present for the interview. The body of the report consists solely of the 18-page verbatim transcript of the interview. The last page of the transcript, which is the final page of the report, is signed by Delehant, who had first-hand knowledge of the statements made in the interview and acted pursuant to a duty to report.[7]

In short, the record establishes that the transcript in this case met all four foundational requirements of OEC 803(6). Specifically, the record shows that (1) the transcript was made on the same day, and therefore at or near the time of, the 2002 interview; (2) Delehant, who had the transcript made, was a person with knowledge and a duty to report; (3) recording and preparing transcripts was a regular activity of the sheriff's office; and (4) the sheriff's office kept those transcripts pursuant to its regularly conducted business.

Defendant nevertheless urges that the record is inadequate for two reasons. First, defendant argues that Clinton provided "no testimony whatsoever about the actual process of transcription." But defendant does not suggest

---

[7] For purposes of both the past recollection recorded and business records exceptions, records of information from multiple sources create a "hearsay within hearsay" problem that requires each level of hearsay to be admissible. Here, for example, the transcript in question essentially is a record of information reported by the victim to the detectives. Under the business records exception, if the victim herself were to have some duty to report the information to police, that would satisfy the business records exception and render both layers of hearsay—the victim's statements, and the detective's report of the victim's statements— admissible under OEC 803(6). *See Cain*, 260 Or App at 633 (business records exception extends to hearsay provided by declarant who has duty to impart the information in regular course of business, but not to declarant who lacks duty to report). If the person providing the information to the reporter has no duty to provide it, then the record is admissible only if some other exception applies to that information. *See* OEC 805 (providing for admissibility of multiple hearsay if each level of statement satisfies independent hearsay exception); Kirkpatrick, *Oregon Evidence* § 803.05[3][d] at 804 (discussing multiple level hearsay problem in records of past recollection recorded); *id.* § 803.06[3][f] at 811 (same for business records). In this case, defendant does not dispute that the victim's statements to the detectives during the 2002 interview were admissible under other exceptions to the hearsay rule. *See* 285 Or App at 857 n 2. Thus, only Delehant had to have a duty to report accurately. Defendant does not dispute that a sworn officer investigating a criminal case would have that duty.

what further information about the "process of transcription" would be required. Clinton explained that the records division, after receiving the cassette tape of an interview, "would transcribe from the tape on to paper." The very term used by Clinton, "transcribe," means "to make a copy of (dictated or recorded matter) in longhand or especially on a typewriter." *Webster's Third New Int'l Dictionary* 2426 (unabridged ed 2002). By using that term, Clinton conveyed what transcription in that context typically entails—a person listens to the audio recording while typing what is said on it, using a conventional means such as a typewriter or computer, to put it into written form. We conclude that Clinton's testimony in that regard sufficed.

Second, defendant urges that Clinton's testimony fell short because, according to defendant, Clinton "could not verify that it is the routine practice of all detectives to verify close in time to the event that the transcript is actually correct." Defendant acknowledges that Clinton specifically testified that detectives "generally" follow the procedures that he described for ensuring the correctness of interview transcripts. But defendant asserts that Clinton's testimony in that regard was not enough to satisfy OEC 803(6), because Clinton acknowledged that he could not say with "certainty" that Delehant had followed that process in this case.

Defendant's quarrel, however, is not with the adequacy of the trial record in this case; it is with the business records exception itself. "Such records are admissible, despite being hearsay, because of their unusual reliability, which is variously ascribed to the regular entries and systematic checking which produce habits of precision, to actual reliance of the business upon them, and to the duty of the record keeper to make an accurate record." *State v. Cain*, 260 Or App 626, 632, 320 P3d 600 (2014) (internal quotation marks omitted). As we earlier discussed, because the exception depends on a business's regularized practices for making and keeping documents on which it relies, the rule requires a showing of the practices that the business follows through the testimony of someone qualified to describe them. That witness "need not have personal knowledge of the contents of the document, nor be familiar with all the circumstances surrounding its preparation." Kirkpatrick,

*Oregon Evidence* § 803.06[3][b] at 809 (citing cases for proposition).[8] To require, as defendant would, that a business record be authenticated by a witness who can say with "certainty" that each step in the document's preparation and retention was accurately performed would be at odds with the terms of the business records exception, as well as the policy that underlies it.

That leaves the second condition that the record must satisfy under *Outdoor Media*, 331 Or at 660: The record must be "materially * * * the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below." The state urges that, in this case, defendant had every reason to raise and develop any factual objections that he might have to the foundation that the state laid for the evidence. We agree, given the trial court's pretrial ruling that the contents of the transcript would be admitted if the state adequately established the regularity of the procedures followed for recording and accurately transcribing victim interviews. Defendant does not contend otherwise.

What defendant does contend, however, is that the trial court might have *ruled* differently because OEC 803(6), unlike the exception for past recollection recorded under OEC 803(5), specifically authorizes a trial court to exclude an otherwise admissible business record if it finds that "the source of information or the method [or] circumstances of preparation indicate lack of trustworthiness." Defendant relies on the existing record to argue that the trial court might have found the transcript to be untrustworthy had it been able to make that inquiry. In particular, defendant points to the fact that, in 2014 at the time of trial, neither the victim nor Clinton could specifically recall that the victim, in 2002, had made a statement to the detectives about a prior act of sexual abuse at the babysitter's house.

---

[8] *See also* Brown, 2 *McCormick on Evidence* § 292 at 448 (modern codifications of business records exception dispense with requirement that persons involved in preparing a document be called as witnesses or be shown to be unavailable; instead, "anyone with the necessary knowledge [of a business's regular record-making procedures] is qualified; this witness need not have firsthand knowledge of the matter reported or actually have prepared the report or observed its preparation").

Defendant also points to the fact that, as other evidence at trial established, the victim's 2002 disclosure of the prior abuse did not prompt further investigation by the detectives. In defendant's view, because the state did not rely on OEC 803(6) at trial, defendant did not argue, and the trial court did not consider, any circumstances that detracted from the trustworthiness of the transcript.

Contrary to defendant's premise, however, defendant in fact objected to the trustworthiness of the transcript, and the trial court fully considered that objection.[9] At the pretrial hearing on the motion *in limine*, defendant addressed the court personally, rather than through counsel, to urge that the "four lines" in the transcript about the abuse at the babysitter's home were "planted in there." In support of his assertion that the relevant portion of the transcript had been "planted" or otherwise falsified, defendant pointed out that the transcript offered by the state was not "an original." Defendant also pointed out that the detectives had not followed up on the disclosure by asking the victim more questions, such as who had abused her. The trial court overruled defendant's objection, because the court deemed defendant's concern to be unsupported and speculative. The trial court assured defendant that he would be free to try to show at trial that the transcript had been altered, and explained that Clinton would be subject to examination "on the witness stand under oath" about the transcript. The trial court further advised defendant, however, that in the absence of support for his claim that the transcript had been altered, defendant's concerns would go "to weight."

As that suggests, the arguments that defendant now makes overlap the arguments defendant made at trial. Defendant not only had the opportunity to take issue with the trustworthiness of the transcript, he in fact did so. Because the trial court considered defendant's objection fully and rejected it on its merits, we are satisfied that the court's ruling would not be different if it were to consider

---

[9] The trial court did not cite any particular source of authority for doing so, but it appears to have considered defendant's objection to the trustworthiness of the transcript in assessing whether the probative value of the evidence was outweighed by undue prejudice under the OEC 403 test for relevancy.

the admissibility of the transcript under OEC 803(6), which authorizes the trial court to make the same inquiry.[10]

In summary, we conclude that the trial court erred by admitting the contents of the transcript as a past recollection recorded pursuant to OEC 803(5). We agree with the state, however, that the portions of the transcript read to the jury by Clinton were admissible as a business record under OEC 803(6). Consequently, we conclude that we should exercise our discretion and affirm on that alternative basis.

Affirmed.

---

[10] Defendant also argues on appeal that, even if the transcript is admissible as a business record, it should be excluded under OEC 803(8)(b), which provides that police reports of "matters observed by police officers" are not admissible under the hearsay exception for public records under OEC 803(8). Defendant's position is that OEC 803(8)(b), which specifically makes police records inadmissible, controls over a more general exception such as the hearsay exception for business records.

Unlike the state's argument for *affirmance* on an alternative ground, defendant's reliance on OEC 803(8) is an alternative ground for *reversing* the trial court, one that we will not consider unless the trial court's failure to exclude the evidence on that ground qualifies as plain error. *State ex rel Juv. Dept. v. Pfaff*, 164 Or App 470, 480 n 6, 994 P2d 147 (1999), *rev den*, 331 Or 193 (2000) ("[A]lthough it is axiomatic that we may affirm on grounds not argued to the trial court, there is no authority for the proposition that, without invoking 'plain error,' we can *reverse* the trial court on grounds not argued to it." (Emphasis in original.)). Defendant could have raised his OEC 803(8) argument at trial, but he did not. On appeal, he does not attempt to argue that admission of the transcript was plain error on that ground, which, among other things, would require an error of law that is obvious and not reasonably in dispute. *See State v. Serrano*, 355 Or 172, 179, 324 P3d 1274 (2014), *cert den*, ___ US ___, 135 S Ct 2861 (2015) (outlining criteria for doctrine); *cf. State v. Scally*, 92 Or App 149, 151-52, 758 P2d 365 (1988) (officer could read report into record pursuant to OEC 803(5) even though report was inadmissible under OEC 803(8)). Consequently, we do not consider defendant's unpreserved reliance on OEC 803(8).