***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Argued and submitted October 4, 2022, conviction on Count 7 reversed and remanded, remanded for resentencing, otherwise affirmed July 6, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MARIO HERNANDEZ-MARQUEZ,
*Defendant-Appellant.*

Multnomah County Circuit Court
19CR46283; A173919

Thomas M. Ryan, Judge.

Daniel C. Bennett, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Conviction on Count 7 reversed and remanded; remanded for resentencing; otherwise affirmed.

**MOONEY, J.**

Defendant appeals from a judgment convicting him of several counts of first-degree sexual abuse, first-degree rape, and first-degree sodomy, all related to defendant's sexual abuse of his stepdaughter, S. He raises five assignments of error. As explained below, we reject defendant's first, second, and third assignments. We accept defendant's fourth and fifth assignments concerning jury unanimity issues and, thus, reverse and remand defendant's conviction on Count 7 because it was based on a nonunanimous jury verdict.

Defendant first assigns error to the trial court's denial of his motion for mistrial made after S's mother testified: "I believed my daughter one hundred percent." The trial court agreed that the mother's statement amounted to improper vouching testimony, and it promptly granted defendant's motion to strike and instructed the jury to disregard the statement. The state concedes that the mother's testimonial statement was improper vouching testimony. We agree and accept the concession. "Vouching" is the expression of one's personal opinion about the credibility of a witness. *See State v. Chandler*, 360 Or 323, 330-31, 380 P3d 932 (2016) (discussing history of the "judicially created rule" against vouching).

The issue is whether the trial court erred in declining to declare a mistrial, a decision that "is addressed to the sound discretion of the trial judge." *State v. Jones*, 242 Or 427, 433, 410 P2d 219 (1966). We agree with the state that because the trial court's ruling was one of several legally correct outcomes, it did not abuse its discretion. While the statement was clearly improper, it was isolated, the prosecutor did not seek it out, and, more importantly, did not repeat it or argue it. The trial court promptly struck the statement from the record and specifically instructed the jury to disregard it. We cannot say, on this record, that the trial court abused its discretion.

Defendant's second assignment is directed to the trial court's ruling allowing the state to play a recording of a police interview of S's former boyfriend, R, relaying S's reports of defendant's actions, as a recorded recollection

under OEC 803(5). That rule of evidence excepts certain statements from the hearsay exclusionary rule even when the declarant is available, including:

> "A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the memory of the witness and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party."

OEC 803(5). Defendant argues that OEC 803(5) did not authorize admission of the recorded interview because R did not adopt the statement when it was fresh in his mind. Indeed, R had very little recollection of the interview and did not even know that it had been recorded. The state "concedes that the trial court mistakenly concluded that the recording was admissible hearsay under OEC 803(5)." We accept that concession. The fact that R did not know he was being recorded leads to the inescapable conclusion that he did not make or adopt the record when the interview was still fresh in his mind. *See State v. Miller*, 287 Or App 135, 155-58, 401 P3d 229 (2017) (distinguishing the making of a "statement" from the making of a "record" and holding that OEC 803(5) requires, at a minimum, that the person making the statement be aware that the statement is being recorded). And because R did not remember the details of the interview at the time of trial, he could not adopt it within the meaning of the rule. *See State v. Edmonds*, 285 Or App 855, 860, 398 P3d 998 (2017), *rev'd on other grounds*, 364 Or 410 (2019) (accepting the state's concession that the testifying officer could not lay a proper foundation for transcript of victim's statement when he did not adopt it "close in time to the interview" but instead reviewed it close to the time of trial, many years later).

The state argues nevertheless that there is little likelihood that the erroneous admission of R's recorded statement affected the verdict. Article VII (Amended), section 3, of the Oregon Constitution requires that we affirm a conviction in spite of any evidentiary error if there is "little

likelihood that the error affected the verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). When reviewing an evidentiary error for harmlessness, we examine the context of the legal error to determine whether there is an indication that the jury would have regarded the excluded evidence as cumulative or unhelpful to its deliberations. *Id.* at 33. Improperly admitted evidence is unhelpful and, thus, harmless when "the particular issue to which the error pertains has no relationship to the jury's determination of its verdict." *Id.* at 32. We also examine how the case was tried and whether the disputed evidence was or was not emphasized by the parties and central to their respective theories of the case. *State v. Simon*, 294 Or App 840, 849, 433 P3d 385 (2018), *rev den*, 365 Or 502 (2019). For example, when the jury is not permitted to hear evidence that goes to the heart of a defendant's factual theory of the case, the exclusion is more likely to be harmful. *Id.*

In a similar vein, when the state is permitted to admit evidence that contradicts the defendant's theory of the case, the probability of that evidence affecting the verdict is increased. *See State v. Roden*, 296 Or App 604, 620-23, 437 P3d 1203 (2019) (concluding that wrongly admitted testimony that "undercut defendant's theory as to what caused [the victim's] death" and "contradicted circumstantial evidence upon which defendant relied" may have influenced the jury's verdict).

Conversely, improperly admitted evidence that might otherwise affect a verdict is rendered harmless by properly admitted, duplicative evidence. *State v. Blaylock*, 267 Or App 455, 474-75, 341 P3d 758 (2014), *rev den*, 357 Or 299 (2015) (concluding that arguably inadmissible hearsay did not offer any additional details or information beyond what had been shown through properly admitted evidence and therefore did not affect the verdict).

Here, the erroneously admitted recording of the police interview was cumulative of much of the testimony given by S, S's therapist, law enforcement witnesses, and the person who conducted S's CARES interview. Those witnesses testified concerning S's fear of defendant, that there had been inappropriate sexual contact between S and

defendant, and that it had happened many times. To the extent that the police interview of R was not cumulative of other evidence, specifically that S had told R that defendant threatened to hurt S if she reported the abuse to anyone, threats against S were not an element of any charge against defendant. We conclude that, given the entire record, it is unlikely that R's recorded statement affected the verdict. Reversal on this assignment is not warranted.

Defendant's third assignment challenges the trial court's denial of his request for a witness-false-in-part jury instruction. We review the denial of a request for a particular jury instruction for errors of law. *State v. Payne*, 366 Or 588, 607, 468 P3d 445 (2020). We evaluate the evidence in the light most favorable to establishing the facts necessary to require the requested instruction. *Id.* ORS 10.095(3) provides that, on all proper occasions, the court is to instruct the jury

> "[t]hat a witness false in one part of the testimony of the witness may be distrusted in others[.]"

The Supreme Court clarified that such an instruction would be "proper"

> "* * * when, considering the testimony and other evidence a party has brought to the court's attention in support of the requested instruction, the trial court concludes that sufficient evidence exists for the jury to decide that at least one witness consciously testified falsely and that the false testimony concerns a material issue."

*Payne*, 366 Or at 600.

The record contains S's testimony that when she sought treatment for anxiety from a healthcare provider, she filled out an intake form and indicated that, among other things, she had no concerns about sexuality, sexual development, or early sexual activity. The record also contains a portion of S's grand jury testimony when she explained that she had been sexually abused by defendant. That grand jury testimony was offered by the state under OEC 801(4)(a)(B) to rebut the "inconsistent statement" that defense counsel elicited from S on cross-examination when questioning her about the intake form. The record, thus, reflects a potential

inconsistency between the health form that S filled out when seeking care for her panic attacks and the testimony that she gave before the grand jury when asked whether defendant had abused her.

The question, though, is not whether the evidence reveals a conflict between S's testimony and some other evidence or prior statement; the question under *Payne* is whether sufficient evidence exists for a jury to conclude that S "consciously testified falsely." *Payne*, 366 Or at 600. Viewing the evidence in the light most favorable to establishing the facts necessary to require the witness-false-in-part instruction, we cannot say that the evidence would support a conclusion that S consciously testified falsely that defendant had abused her. The trial court did not err in declining to give that instruction.

Defendant's fourth and fifth assignments challenge the trial court's use of a nonunanimous jury instruction as well as its receipt of a nonunanimous verdict on Count 7, first-degree sodomy. The state concedes that the court erred when it instructed the jury that it could return a guilty verdict on a vote of less than all of its members and that the trial court erred by accepting a nonunanimous verdict on the sodomy count. We accept the state's concession as appropriate, and we reverse and remand defendant's conviction on Count 7. *Ramos v. Louisiana*, ___ US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020); *State v. Ciraulo*, 367 Or 350, 478 P3d 502 (2020).

Conviction on Count 7 reversed and remanded; remanded for resentencing; otherwise affirmed.