BALMER, J.
*754 **412 Under Oregon's rules of evidence, hearsay-that is, an out-of-court statement offered to prove the truth of the matter asserted in or by the statement-is generally inadmissible. OEC 802 ("Hearsay is not admissible except as provided in ORS 40.450 to 40.475 or as otherwise provided by law."). That rule reflects a preference for testimony that is given in-court, under oath, and subject to cross-examination. However, the legislature has adopted specific exceptions to the prohibition on hearsay evidence. Any hearsay that is to be admitted must satisfy one of those exceptions. The question that this case presents is whether a transcript of a police interview, which is unquestionably hearsay evidence, can be introduced under the business records exception, OEC 803(6). That question is complicated by the existence of the official records exception, OEC 803(8)(b), an overlapping hearsay exception that specifically excludes from its scope "matters observed by police officers and other law enforcement personnel" in criminal cases. We hold that the limitations that the legislature placed on the use of law enforcement records in OEC 803(8)(b) cannot be avoided by introducing those records under the business records exception. We therefore hold that the trial court's decision to admit part of the transcript into evidence was error, and we accordingly reverse defendant's conviction.
We begin with a brief summary of the facts. In 2015, defendant was charged with having raped a five-year-old girl in 1994 or 1995. At the time that the crime occurred, defendant's wife operated a daycare service out of her and defendant's home. The victim was regularly left at that daycare. At defendant's trial, the victim-who was 25 at the time-testified that, on one occasion, while she was at the daycare, defendant had taken her into another room and raped her. The victim testified that she had reported the rape to her mother on the day that it had happened and to her father, grandmother, therapist, and school counselor in 2002.
Defendant's theory of the case was that the victim had formed a false memory of the rape. In support of that theory, defendant offered testimony from an expert witness **413 that memories can become distorted over time and that false memories are possible. Defendant also presented testimony from the victim's mother and grandmother that they had only learned of the rape in the past year and had not previously been told about it by the victim. Defendant also called the therapist and the counselor as witnesses. Each testified that they had no recollection of the victim telling them about being raped by defendant and that, as mandatory reporters of child abuse, they would have made a report to the Department of Human Services if they had been told. From that evidence, defendant attempted to make the case that the victim's memories of the rape had formed only recently and were therefore false.
In anticipation of that defense, the state attempted to introduce evidence that the victim had, in 2002, reported a past instance of sexual abuse "at her babysitter's" to law enforcement. In 2002, two sheriff's deputies, Clinton and Delehant, had interviewed the victim in connection with her report of a different incident of sexual abuse, one that did not involve defendant. At defendant's trial in 2015, the state presented a transcript of that interview and sought to have Clinton read a short excerpt to the jury. That excerpt of the transcript recorded the deputies asking the victim whether anyone had previously touched her in a sexual way and her response: "When I was at a babysitter's but that was like when I was really, really, really young."
Delehant had originally created an audio recording of the interview. Pursuant to department policy, the records division of the sheriff's office had transcribed the taped interview.
*755 That transcript had then been sent to Delehant so that he could review it for accuracy. Delehant had signed a report containing the transcript, and that report had been placed in the case file concerning the other incident of sexual abuse. After that case was closed, the recording had been destroyed.
The transcript involved two layers of out-of-court statements: the victim's statement to the deputies, and the transcript's recounting of that statement. See State v. Pinnell , 311 Or. 98, 117 n. 29, 806 P.2d 110 (1991) (discussing a similar instance of multilayered hearsay). The trial court, **414 in a ruling that was not challenged on appeal, held that the victim's statement to the deputies although it occurred out of court fell under OEC 801(4)(a)(B), which designates as nonhearsay a past, consistent statement introduced to rebut a charge of recent fabrication.
As to the other layer of hearsay, the transcript itself, the state argued that the hearsay exception for past recollections recorded, OEC 803(5), applied. That hearsay exception allows a written record to be read to the finder of fact if, at the time of trial, a witness has forgotten the events recounted in the record and the record is "shown to have been made or adopted by the witness when the matter was fresh in the memory of the witness and to reflect that knowledge correctly." The state did not argue that any other hearsay exception applied.
To lay a foundation for that evidence, the state called Clinton, but did not call either Delehant or the person who had transcribed the interview. Clinton testified that he remembered interviewing the victim and asking her about other instances of sexual abuse. He did not, however, recall her answer to that question, even after attempting to refresh his memory with the transcript. Clinton also testified about the transcription policy and the circumstances under which the transcript was produced. However, he did not testify that he had reviewed the transcript at the time that it was produced. The trial court, on that record and over defendant's objection, concluded that the past recollection recorded exception applied and allowed the relevant part of the transcript to be read to the jury. Defendant was convicted of first-degree rape.
Defendant appealed, assigning error to the admission of the transcript and arguing that the past recollection recorded exception did not apply. The state conceded that it was error for the trial court to admit the transcript as a past recollection recorded because Clinton had not adopted the transcript close in time to the interview. However, the state argued that defendant's conviction should nevertheless be affirmed because the trial court's decision was "right for the wrong reason" and because any error in admitting the transcript was harmless.
**415 Under the "right for the wrong reason" doctrine, a trial court's ruling can be affirmed based on a ground that the trial court did not consider, but only when several conditions are met, among them:
"(1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below."
Outdoor Media Dimensions Inc. v. State of Oregon , 331 Or. 634, 659-60, 20 P.3d 180 (2001). Here, the state argued that all the requirements of the business records exception, OEC 803(6), were satisfied, and that defendant had equally good reasons to challenge all those requirements at the time of trial and would not have litigated the admissibility issue any differently had the state raised the business records exception at trial.
Defendant, in his reply brief, took issue with each of those assertions. Defendant focused, however, on an argument, raised for the first time in response to the state's "right for the wrong reason" reliance on the business records exception: that police reports could not be admitted under the business records exception because of the bar to the admission of "matters observed by police officers and other law enforcement personnel" contained in the hearsay exception for official records, OEC 803(8)(b).
*756 The Court of Appeals affirmed defendant's conviction. State v. Edmonds , 285 Or. App. 855, 398 P.3d 998 (2017). Consistent with the state's concession, the Court of Appeals first held that the trial court had erred by admitting the transcript under OEC 803(5), observing that "the state might have been able to satisfy the rule's requirement by calling Delehant as a witness, but it could not do so through Clinton." Id. at 861, 398 P.3d 998. The Court of Appeals also determined that all the requirements for admitting the transcript under the business records exception were satisfied, id. at 864, 398 P.3d 998, and that the trial record would not have developed any differently if the state had raised that argument below, **416 id . at 867-68, 398 P.3d 998. However, the Court of Appeals refused to consider defendant's argument that OEC 803(8)(b) controlled over OEC 803(6), reasoning that,
"[u]nlike the state's argument for affirmance on an alternative ground, defendant's reliance on OEC 803(8) is an alternative ground for reversing the trial court, one that we will not consider unless the trial court's failure to exclude the evidence on that ground qualifies as plain error. Defendant could have raised his OEC 803(8) argument at trial, but he did not."
Id. at 868 n. 10, 398 P.3d 998 (emphasis in original; citations omitted).
Defendant petitioned this court for review, arguing that the Court of Appeals erred in refusing to consider his OEC 803(8) argument and that that argument was correct. We allowed review.[1]
On review, defendant argues that the Court of Appeals erred by failing to consider his argument about OEC 803(8)(b). Defendant contends that the Court of Appeals' application of preservation rules was unfair and inconsistent with the principles outlined in this court's decision in Peeples v. Lampert , 345 Or. 209, 191 P.3d 637 (2008). On the merits, defendant renews his arguments from the Court of Appeals that evidence that would be barred by OEC 803(8)(b) cannot be introduced under OEC 803(6).
For its part, the state readily concedes that defendant's OEC 803(8)(b) argument should have been considered. The state also agrees with defendant that, in general, the proscription of the introduction of law enforcement records under OEC 803(8)(b) prevents those records from being introduced as business records under OEC 803(6). The state argues, however, that that bar on admissibility applies only where the hearsay evidence would otherwise be admissible under OEC 803(8)(b), but for the prohibition. And, the state continues, the transcript was not admissible **417 under OEC 803(8)(b) in the first place because it did not set forth "[m]atters observed pursuant to duty imposed by law as to which matters there was a duty to report."
The first issue before us is whether to consider defendant's argument that OEC 803(8)(b) barred admission of the transcript under OEC 803(6). We agree with the parties that the Court of Appeals erred in declining to do so.
As noted, the Court of Appeals refused to consider defendant's argument that OEC 803(8)(b) barred admission of the evidence under OEC 803(6), stating that "[u]nlike the state's argument for affirmance on an alternative ground, defendant's reliance on OEC 803(8) is an alternative ground for reversing the trial court ***." Edmonds , 285 Or. App. at 868 n. 10, 398 P.3d 998 (emphasis in original). That description shows a misapprehension of the nature of defendant's argument. Defendant's OEC 803(8)(b) argument was not an independent basis for reversing the trial court, it was a response to the state's new, alternative grounds for affirmance. Because the state did not make any argument concerning OEC 803(6) until the case reached the Court of Appeals, defendant cannot be faulted for having failed to respond to that argument in the trial court.
*757 It is also not possible to infer from defendant's decision not to raise OEC 803(8)(b) at trial in response to the state's past recollection recorded argument that he waived all reliance on OEC 803(8)(b), regardless of the state's arguments on appeal. Whether OEC 803(8)(b) bars admission of evidence under the past recollection recorded exception is a different question from whether it bars admission of evidence under the business records exception-those two hearsay exceptions have different scopes and different consequences when they apply.[2] Moreover, the Court of Appeals previously had held that OEC 803(8)(b) did not bar the admission of police reports under OEC 803(5), but it never had addressed whether the same was true under OEC 803(6). State v. Scally , 92 Or. App. 149, 758 P.2d 365 (1988). It cannot be assumed that, because trial counsel did not raise **418 an argument that-at the trial level-would certainly have failed, he also would have foregone an argument that might have succeeded.
Thus, the Court of Appeals allowed the state to raise a new ground for affirming the trial court but forbade defendant from raising a new argument in response. That is not consistent with the "twin goals of ensuring procedural fairness and judicial efficiency" that undergird the preservation requirement. Peeples , 345 Or. at 223, 191 P.3d 637. That requirement is designed to ensure "fairness to an opposing party, by permitting the opposing party to respond to a contention and by otherwise not taking the opposing party by surprise." Id . at 219, 191 P.3d 637. Here, the Court of Appeals' application of preservation rules prevented, rather than ensured, that basic guarantee of fairness. Moreover, the other principal reason for the preservation requirement-"giv[ing] a trial court the chance to consider and rule on a contention, thereby possibly avoiding error altogether or correcting one already made," id . -simply does not apply here. The trial court was not presented with the state's OEC 803(6) argument, so it would not have found defendant's counter-argument helpful, or even relevant. Consequently, defendant was not required to preserve his response to the state's new argument, and the Court of Appeals erred in affirming the trial court on the state's new ground without considering what defendant had to say in response.[3] For the same reason, defendant's OEC 803(8)(b) argument is properly before this court.
We next turn to the merits. The parties' partial agreement on the applicability of the official records **419 exception, OEC 803(8)(b), does not lessen our task, because "this court is duty-bound to interpret the law correctly, without regard to the parties' arguments or lack thereof." State v. Vallin , 364 Or. 295, 300, 434 P.3d 413 (2019). We look, therefore, to text, context, and legislative history. State v. Gaines , 346 Or. 160, 171, 206 P.3d 1042 (2009).
The first relevant hearsay exception is the business records exception, OEC 803(6), which exempts from the general prohibition on hearsay
"[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it *758 was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method of circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this subsection includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."
OEC 803(6). The second relevant hearsay exception is the official records exception, OEC 803(8). That exception allows the introduction of
"[r]ecords, reports, statements or data compilations, in any form, of public offices or agencies, including federally recognized American Indian tribal governments, setting forth:
"(a) The activities of the office or agency;
"(b) Matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, in criminal cases, matters observed by police officers and other law enforcement personnel;
"(c) In civil actions and proceedings and against the government in criminal cases, factual findings, resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness; or **420 "(d) In civil actions and criminal proceedings, a sheriff's return of service."
OEC 803(8).
The business records exception and the official records exception substantially overlap and are justified on similar grounds. The legislature explained the presumptive reliability of business records by pointing "to the regular entries and systematic checking which produce habits of precision, to actual reliance of the business upon them, and to the duty of the record keeper to make an accurate record." Legislative Commentary to OEC 803(6), reprinted in Laird C. Kirkpatrick, Oregon Evidence § 803.06, 806 (6th ed. 2013). The official records exception "is justified by the assumption that a public official will perform the official's duty, and by the unlikelihood that a person will remember details independently of the record" and, in the case of paragraphs (a) and (b), "the reliability factors mentioned * * * in subsection (6)." Legislative Commentary to OEC 803(8), reprinted in Kirkpatrick, Oregon Evidence § 803.08, 818.
Although the official records exception allows the introduction of a wide array of government records, OEC 803(8)(b) and (c) both contain text that prevents evidence that would otherwise be admissible under those provisions from being introduced against criminal defendants or in criminal cases. OEC 803(8)(c) allows evaluative reports to be introduced only "[i]n civil actions and proceedings and against the government in criminal cases." OEC 803(8)(b), the paragraph of the official records exception at issue in this case, excludes from its coverage, "in criminal cases, matters observed by police officers and other law enforcement personnel."
The literal text of OEC 803(8)(b), read in isolation, does not prohibit law enforcement records from being introduced if permitted under other hearsay exceptions. But, "we do not consider the meaning of a statute in a vacuum; rather, we consider all relevant statutes together, so that they may be interpreted as a coherent, workable whole." Unger v. Rosenblum , 362 Or. 210, 221, 407 P.3d 817 (2017). In the case of law enforcement records, the official records exception and the business records exception overlap. Records of **421 "[m]atters observed pursuant to duty imposed by law as to which matters there was a duty to report," OEC 803 (8)(b), are very likely also to be "kept in the course of a regularly conducted business activity [where] it was the regular practice of that business activity to make the memorandum, report, record, or data compilation," OEC 803(6).[4] That overlap is not surprising, *759 because, as the legislative commentary notes, both hearsay exceptions are rooted in the same indicia of reliability. Legislative Commentary to OEC 803(8), reprinted in Kirkpatrick, Oregon Evidence § 803.08, 818. But allowing the more general business records exception to permit the introduction of records that the official records exception specifically excludes would threaten to nullify that exclusion.
We have recognized that, "when one statute deals with a subject in general terms and another deals with the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, while giving effect to a consistent legislative policy." State v. Guzek , 322 Or. 245, 268, 906 P.2d 272 (1995). That interpretive canon, referred to as "the specific controls the general," has in Oregon been codified by ORS 174.020(2), which provides that,
"[w]hen a general provision and a particular provision are inconsistent, the latter is paramount to the former so that a particular intent controls a general intent that is inconsistent with the particular intent."
The reason for that doctrine is that "the specific provision comes closer to addressing the very problem posed by the case at hand and is thus more deserving of credence." Antonin **422 Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 183 (2012). That doctrine is often applied in the context of a "general permission that is contradicted by a specific prohibition." Id.
That is the case here. The business records exception in OEC 803(6) applies to police records, among other types of records, and excepts them from the hearsay rule. By contrast, the official records exception in OEC 803(8)(b) deals more specifically with the admissibility of hearsay law enforcement records and does not allow those records to be introduced in criminal cases. If we allowed OEC 803(6) to control the admission of law enforcement records in criminal cases, then the legislature's more specific treatment of that subject in OEC 803(8) would be obviated. Because of the overlap between the two exceptions, virtually all law enforcement records barred by OEC 803(8)(b) would be admissible under OEC 803(6), and the prohibition in OEC 803(8)(b) would be nullified. As a result, ordinary principles of statutory construction lead us to conclude that OEC 803(8)(b), not OEC 803(6), controls the admission of law enforcement records in criminal cases.
In addition, the text of OEC 803(6) and (8) was not an original product of the Oregon legislature. When enacted in 1981, OEC 803 was "identical to Rule 803 of the Federal Rules of Evidence," with a handful of exceptions not relevant here. Legislative Commentary to OEC 803, reprinted in Kirkpatrick, Oregon Evidence § 803.01, 777; see Or. Laws 1981, ch. 892, § 64 (enacting OEC 803 ). "When an Oregon statute has been copied from federal law[,] this court will adopt the interpretation given the federal act by the federal courts." U. of O. Co-Oper. v. Dept. of Rev. , 273 Or. 539, 544, 542 P.2d 900 (1975). When the Oregon Evidence Code was adopted in 1981, the legislature would have had the benefit of several federal decisions on exactly this point, concerning the then-identical federal hearsay exceptions, FRE 803(6) and FRE 803(8). The most significant of those federal decisions was United States v. Oates , 560 F.2d 45 (2d Cir. 1977). In Oates , the trial court admitted into evidence two reports of government chemists, relying on the business records exception found in FRE 803(6). The Second Circuit **423 reversed, relying on FRE 803(8) and holding that "both the language of Rule 803(8) and the congressional intent, as gleaned from the explicit language of the rule and from independent sources, which impelled that language have impact that extends beyond the immediate confines of exception (8) itself." Oates , 560 F.2d at 66. The Second Circuit reviewed the *760 legislative history of FRE 803(8) in detail, concluding that there was "clear legislative intent not only to exclude such documents from the scope of FRE 803(8) but from the scope of FRE 803(6) as well." Id. at 68.
Oates proved influential. In the few years between 1977, when Oates was decided, and 1981, when Oregon adopted its version of FRE 803(8), the Fifth and Ninth Circuits had followed Oates in holding that law enforcement records that were "inadmissible as public agency reports under Rule 803(8) may not be received merely because they satisfy Rule 803(6)" and that "section (6) does not open a back door for evidence excluded by section (8)." United States v. Cain , 615 F.2d 380, 381-82 (5th Cir. 1980) ; see also United States v. Sims , 617 F.2d 1371, 1377 (9th Cir. 1980) (declining to hold law enforcement records admissible under FRE 803(6), because "the plain language of Rule 803(8) makes it abundantly clear that it is the rule which covers reports made by law enforcement personnel"); United States v. Orozco , 590 F.2d 789, 793 (9th Cir. 1979) (same).
Two other circuits had reached similar conclusions concerning the admissibility of law enforcement records under FRE 803(6). Independently of Oates , the D.C. Circuit had reasoned that FRE 803(6), read in conjunction with FRE 803(8), prohibited the introduction into evidence of law enforcement records by the prosecution, although it permitted their use by defendants. United States v. Smith , 521 F.2d 957, 968-69 n. 24 (DC Cir. 1975). The Seventh Circuit also had generally accepted the inadmissibility of law enforcement records under the business records exception, but had held that police reports could be admitted as business records only if the declarant testified. United States v. King , 613 F.2d 670, 673 (7th Cir. 1980). By contrast, no court that had considered the issue had rejected Oates 's conclusion that law enforcement records were generally not admissible **424 under the business records exception in criminal cases.[5] That context, paired with the text of OEC 803, supports the conclusion that, under the Oregon Evidence Code, "section (6) does not open a back door for evidence excluded by section (8)." Cain , 615 F.2d at 381-82.
However, that holding does not resolve this case. The state agrees with the general proposition that OEC 803(6) does not open a "back door" to the admission of evidence that is subject to the prohibition in OEC 803(8)(b). But, the state argues, that general principle does not apply to this case because the transcript that it introduced was not admissible under OEC 803(8)(b) in the first place. In other words, the state posits that the evidence excluded by OEC 803(8)(b) -"matters observed by police officers and other law enforcement personnel"-is limited to evidence that satisfies the first clause of OEC 803(8)(b) -"[m]atters observed pursuant to duty imposed by law as to which matters there was a duty to report." The state argues that this court has used the words "duty imposed by law" to refer exclusively to duties arising under a statute or the common law, a meaning that the state argues must therefore be imported into OEC 803(8)(b). The state asserts that, because the transcriber's actions were not necessary to the performance of any statutory duty-the transcript was compiled in accordance with a departmental rule-the transcript does not contain "matters observed pursuant to duty imposed by law." In short, the state reasons, *761 the transcript was not admissible under OEC 803(8)(b) in any event and, therefore, defendant may not avail himself of the exclusion set out in that rule. **425 Defendant responds that the state's argument runs counter to the structure of the hearsay rules because it would require police reports that satisfy the requirements of OEC 803(8)(b) to be excluded, but permit the introduction of hearsay statements that cannot satisfy the guarantees of reliability contained in OEC 803(8)(b). On defendant's reading, hearsay statements contained in law enforcement records can never be admitted under the business records exception in criminal cases. Defendant further argues that, in this case, the state loses even under its own view of the interaction between OEC 803(6) and OEC 803(8)(b), because the transcript does satisfy the first clause of OEC 803(8)(b). Defendant continues that the state's reading of "duty imposed by law" is unnecessarily crabbed and that federal decisions do not require a specific statutory duty. See United States v. Lopez , 762 F.3d 852, 862 (9th Cir. 2014) (Under FRE 803(8)"it suffices if the nature of the responsibilities assigned to the public agency are such that the record is appropriate to the function of the agency.").
We need not address the parties' disagreement about the interaction between OEC 803(6) and OEC 803 (8)(b), because we agree with defendant that the transcript satisfied the requirements of the first clause of OEC 803 (8)(b). Under OEC 803(8)(b), the availability of the official records exception turns on the presence of two duties. First, the information contained in the record must be "observed pursuant to duty imposed by law." Second, the exception extends only to those matters "as to which there is a duty to report." The state does not argue that that second duty was absent here; it focuses exclusively on the first duty, arguing that the phrase "imposed by law" limits the hearsay exception to matters observed pursuant to statutory or common law duties.
To begin with, the state is not correct that this court has used the phrase "duty imposed by law" to refer exclusively to common-law and statutory duties. This court has used that phrase many times, principally in the tort law context, and some of those usages are consistent with the meaning that the state accords to the phrase. See Hoag v. Washington-Oregon Corp ., 75 Or. 588, 602, 147 P. 756 (1915) ("The whole obligation of the employer to the employee is **426 the sum of all the duties imposed by law, whether common law or statute ***."). Yet, the court also has used the phrase "duty imposed by law" to refer exclusively to statutory duties, when contrasting them with common-law duties of care. Simmons v. Holm et al , 229 Or. 373, 397, 367 P.2d 368 (1961) ("So far as the duty imposed by law, i.e ., by statutory law, is concerned, we find no error. *** As to the general common-law duty of reasonable care, we think that the instruction taken alone would be erroneous."); Vroman v. Upp , 158 Or. 597, 603, 77 P.2d 432 (1938) ("This duty of the disfavored driver to look is not measured by the degree of caution used by a person of ordinary care and prudence, but is an absolute duty imposed by law."). And the court also has used the phrase to refer to duties imposed by rules and regulations, as well as by statutes. Shahtout v. Emco Garbage Co. , 298 Or. 598, 604, 695 P.2d 897 (1985) ("If the rule [adopted by the Workers' Compensation Department] is mandatory, compliance with it is a duty imposed by law and violation is a breach of that duty ***."); Miller v. Grants Pass Irrigation , 297 Or. 312, 323, 686 P.2d 324 (1984) (Lent, J., concurring) ("In order for there to be a tort the actor must breach some duty imposed by law, that is, by legislative enactment (statute, rule, regulation, charter, ordinance, etc.) or the common law."). It is not clear that the legislature meant to tap into any one of those many meanings of "duty imposed by law" in OEC 803(8)(b).
Moreover, OEC 803(8) was derived from the common-law official records exception, "one of the well-established common law hearsay exceptions." State v. Copeland , 353 Or. 816, 830, 306 P.3d 610 (2013). See Legislative Commentary to OEC 803(6), reprinted in Kirkpatrick, Oregon Evidence § 803.06, 806 ("Public records are a recognized exception at common law and have been the subject of numerous statutes."). It was well-settled under the common-law exception that *762 a specific statutory duty was not required when the record was prepared by a public official:
"It is clear that no express statute or regulation is needed for creating the authority or duty to make the statement. The existence of the duty, and not the source of its creation, is the sanctioning circumstance. Not all, nor the greater part, of an officer's conceded duties are expressly laid upon him **427 by written law. They may arise from the oral and casual directions of a superior, or from the functions necessarily inherent in the office. Where the nature of the office fairly requires or renders appropriate the making and recording of a specific statement, that statement is to be regarded as made under official duty."
John Henry Wigmore, 5 Evidence in Trials at Common Law 622, § 1633(1) (James H. Chadbourne rev. 1974) (emphasis in original). See also Evanston v. Gunn , 99 U.S. 660, 666-67, 25 L.Ed. 306 (1878) ("To entitle them to admission it is not necessary that a statute requires them to be kept. It is sufficient that they are kept in the discharge of a public duty. Nor need they be kept by a public officer himself, if the entries are made under his direction by a person authorized by him.") (citations omitted).
The state's argument rests on a second misconception as well. In arguing that the words "observations pursuant to a duty imposed by law," OEC 803(8)(b), require, in this case, a demonstration that the transcriber had a specific statutory duty to listen to the tape, the state's focus is on the words "duty imposed by law." We think that, here, the more important part of the phrase "pursuant to duty imposed by law" is the words "pursuant to." Webster's Third New International Dictionary defines "pursuant to" as "in the course of carrying out : in conformance to or agreement with : according to." Webster's Third New Int'l Dictionary 1848 (unabridged ed. 2002). When ORS 803(8)(b) creates an exception for "matters observed" in carrying out "a duty imposed by law," it is not limited to matters that the law imposes a duty to observe[6] or to observations that are necessary to the performance of a duty. That requirement is satisfied when a public official makes observations in the course of carrying out a duty.
For that reason, even if OEC 803(8)(b) required a statutory duty, that requirement would be satisfied here. In general, statutes assign duties to the office itself, or to **428 a principal officer thereof. The statutes assigning duties to the sheriff are representative:
"The sheriff is the chief executive officer and conservator of the peace of the county. In the execution of the office of sheriff, it is the sheriff's duty to:
"(1) Arrest and commit to prison all persons who break the peace, or attempt to break it, and all persons guilty of public offenses.
"(2) Defend the county against those who, by riot or otherwise, endanger the public peace or safety."
ORS 206.010. Other pertinent duties in effect at the time that the transcript in this case was made can be found in ORS 419B.020 (2001):
"(1) Upon receipt of an oral report of child abuse, the Department of Human Services or the law enforcement agency shall immediately:
"(a) Cause an investigation to be made to determine the nature and cause of the abuse of the child;
"* * * * *
"(2) If the law enforcement agency conducting the investigation finds reasonable cause to believe that abuse has occurred, the law enforcement agency shall notify by oral report followed by written report the local office of the department."
Thus, the main duties of the office of sheriff are assigned directly to the sheriff or to the office. The relevant statutes then allow the sheriff to divide up those duties among subordinates:
"Notwithstanding the provisions of ORS 241.016 to 241.990 or any other county civil service law or regulation, the sheriff may *763 organize the work of the office of the sheriff so that:
"(1) The various duties required of the office may be assigned to appropriate departments and divisions to be performed by persons experienced and qualified for such respective kinds of work.
"(2) The duties of the various assistants, officers and deputies of the sheriff are coordinated so that, when not **429 engaged in a particular duty specified or directed to be done and not then requiring attention, such persons shall perform the other duties required of the office and then required to be done."
ORS 206.210. For that reason, when an employee of the sheriff's department-whether a sheriff's deputy or an employee of the records office-performs duties assigned by the sheriff, or assigned by the rules of the department, that employee acts "pursuant to duty imposed by law," within the meaning of OEC 803(8)(b), provided that the assigned duties are part of carrying out the overall duties of the office.[7]
For that reason, the state's argument fails. Here, the transcriber produced the transcript from the tape in accordance with the sheriff's office's internal rules-rules presumably designed to carry out the duties of the sheriff and of the office. Although the state has argued that the transcriber's actions were not necessary to the performance of those duties, there is no suggestion that transcribing the interview was inappropriate or inconsistent with those duties, or was performed for some other reason. On the record before us, the transcript is admissible under the first clause of OEC 803(8)(b) as a record of "[m]atters observed pursuant to duty imposed by law as to which matters there was a duty to report." Thus, the second clause of OEC 803 (8)(b) prohibits its admission in a criminal case under the official records exception or under the business records exception. Therefore, the state's argument that the trial court's decision to admit the transcript was "right for the wrong reason" fails. The admission of the transcript was error.
Having arrived at that conclusion, the remaining question is whether defendant's conviction should be reversed. "[E]videntiary error does not require reversal if it is harmless-that is, if it had little likelihood of affecting the verdict."
**430 State v. Henley , 363 Or. 284, 307, 422 P.3d 217 (2018). "An evidentiary error is more likely to influence a verdict if the error relates to 'a central factual issue in this case,' " State v. Bement , 363 Or. 760, 779, 429 P.3d 715 (2018) (quoting State v. Marrington , 335 Or. 555, 566, 73 P.3d 911 (2003) ). That was true here. The transcript was used principally to rebut defendant's argument that the victim's accusation was based on a false memory that had emerged only recently. The fact that the transcript predated the trial by 10 years cut at the heart of that defense.
In addition, the transcript was "qualitatively different" from the other evidence on that point, rather than "merely cumulative." State v. Davis , 336 Or. 19, 34, 77 P.3d 1111 (2003). The state notes that the jury also heard testimony from the victim's father that the victim had told him that she had been raped by defendant in 2002, which was consistent with the victim's own testimony. The state also points to testimony by the victim's brother that he was told by his mother, in 1996, that "somebody walked in on somebody on top of my sister in one of the bedrooms."[8] However, unlike the other pieces of evidence that the state mustered, the transcript's reliability did not depend on memory and thus was immune from defendant's main line of attack. In addition, the source of the testimony made the transcript less assailable than *764 the other evidence on the same point. The victim's family members might be understood to be biased in ways that the individual who prepared the transcript would not have been. For that reason, it is not surprising that the state referred to the transcript, but not the other testimony, in its closing argument. Moreover, the victim had testified to having told her therapist and her high school counselor about the rape in 2002, and defendant had presented evidence contradicting that testimony. Evidence that the victim had been willing to tell multiple people about the rape during that time, including individuals who were not close family members, was a more compelling response to defendant's attack on the reliability of the victim's memory **431 than the testimony from her father alone. Consequently, we cannot say that the error in admitting the transcript was harmless. Defendant's conviction must be reversed.
The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

We also allowed review on a separate question. Defendant argues that if the reliability of the transcript had been relevant to its admissibility-which it would have been if OEC 803(6) had been raised at trial-the record would have developed differently because defendant would have had a reason to challenge the reliability of the transcript as pertained to its admissibility. Because we rule in defendant's favor on other grounds, we do not reach that argument.

Unlike under the business records exception, hearsay evidence introduced as a past recollection recorded under OEC 803(5)"may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party."

We recognize that, as a practical matter, the "right for the wrong reason" doctrine might leave appellate courts with inadequate briefing on an important issue. In this case, for example, the state first raised its business records exception argument in its Court of Appeals answering brief. Defendant's OEC 803(8)(b) argument, consequently, was raised in his Court of Appeals reply brief. Because the state did not anticipate that argument in its answering brief, no briefing from the state addressed the OEC 803(8)(b) argument before the Court of Appeals. A court might understandably hesitate to decide that question without the benefit of the fuller briefing that would have developed if those arguments had been made from the start. But the appropriate response, in those circumstances, would be to ask for additional briefing or to decline to affirm on an alternative basis, not to affirm without considering the arguments against the alternative basis. Any inadequacy in the record is the fault of the party that failed to raise the alternative basis below, not of the party now responding to it.

It is perhaps not intuitive that a sheriff's office conducts "business activity." Yet " 'business' as used in [OEC 803(6) ] includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit." OEC 803(6). There is no implication in that text that public entities are excluded. As the legislative commentary recognizes, prior to the adoption of OEC 803(6), similar text in an equivalent hearsay exception, former ORS 41.680 (1969), repealed by Or. Laws 1981, ch. 892, § 98 (" 'business' *** shall include every kind of business, profession, occupation, calling or operating of institutions, whether carried on for profit or not"), had been interpreted to include records kept by sheriff's deputies at a jail. State v. Roisland , 1 Or. App. 68, 71-72, 459 P.2d 555 (1969) ; Legislative Commentary to OEC 803(6), reprinted in Kirkpatrick, Oregon Evidence § 803.06, 806.

Some courts, without casting doubt on the application of Oates in the business records exception context, had held before 1981 that FRE 803(8) did not bar the admission in criminal cases of hearsay evidence under hearsay exceptions other than FRE 803(6). See United States v. Sawyer , 607 F.2d 1190, 1193 (7th Cir. 1979), cert. den. , 445 U.S. 943, 100 S.Ct. 1338, 63 L.Ed.2d 776 (1980) (FRE 803(5) ); United States v. Cepeda Penes , 577 F.2d 754, 761 (1st Cir. 1978) (FRE 803(10) ). Additionally, some federal circuits, including the Second Circuit, had held that law enforcement records containing routine and nonadversarial matters could be admitted in criminal cases under what was known as the ministerial exception. Orozco , 590 F.2d at 794 (admitting routine notations of license plate numbers made by customs agents); United States v. Grady , 544 F.2d 598, 604 (2d Cir. 1976) (admitting records of the "routine function of recording serial numbers and receipt of certain weapons found in Northern Ireland"); see also State v. Smith , 66 Or. App. 703, 675 P.2d 510 (1984) (adopting the ministerial exception under OEC 803(8) and admitting breathalyzer records). Neither of those limitations is pertinent to this case.

That contrasts with the second duty required for admissibility under OEC 803(8)(b) -the duty to report. There, OEC 803(8)(b) does require a "duty to report," as opposed to requiring only that the report be made in the course of carrying out duties.

We do not mean to suggest that public offices must have a statute expressly allowing the delegation of duties for the official records exception to apply to duties carried out by lower level officials or employees. We highlight the specific statutes pertaining to the sheriff because they are illustrative of the general structure of public agencies, not because they contain specific wording that is essential to our conclusion.

The brother's testimony was introduced only to impeach the mother's prior testimony that she had been unaware of defendant's abuse in 1996, not as substantive evidence of the truth of mother's statement. It thus did not serve all the same purposes that the transcript did. Also, unlike the transcript, it was not consistent with the victim's trial testimony, because she did not describe anyone walking in on defendant while he raped her.