Submitted January 18, 2022, affirmed February 1, petition for review denied May 18, 2023 (371 Or 106)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MITCHELL RAY CANTWELL,
aka Mitchell Cantwell,
*Defendant-Appellant.*

Douglas County Circuit Court
18CR46996; A173436

524 P3d 523

Defendant appeals from a judgment of conviction for second-degree robbery and second-degree theft. ORS 164.405; ORS 164.045. He argues that the trial court erred by admitting evidence of fingerprint records which were inadmissible hearsay. The state argues that the fingerprint record was properly admitted by the trial court under the public records hearsay exception. OEC 803(8)(b). *Held*: The trial court did not err. The fingerprint record was created during booking at the jail which is a routine, nonadversarial process that does not involve the exercise of police officer judgment. The fingerprint record is, therefore, a public record under OEC 803(8)(b) and is not excluded by the hearsay rule.

Affirmed.

George William Ambrosini, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Emily P. Seltzer, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Mooney, Presiding Judge, and Pagán, Judge, and Hadlock, Judge pro tempore.

MOONEY, P. J.

Affirmed.

**MOONEY, P. J.**

Defendant appeals from a judgment of conviction for second-degree robbery, ORS 164.405[1] (Count 1), and second-degree theft, ORS 164.045[2] (Count 2). In two assignments of error, he asserts: (1) "[t]he trial court erred in admitting evidence of defendant's Douglas County Jail fingerprint record," and (2) "[t]he trial court erred in admitting evidence of defendant's FBI fingerprint record." Because the document described as the "FBI fingerprint record" was not admitted into evidence, we reject without further discussion defendant's second assignment of error challenging the court's admission of that document.

In a third assignment, defendant contends that the trial court erred in instructing the jury that it could reach a verdict convicting defendant on a vote of 10 or more of its members. Because defendant was convicted by unanimous vote of the jury, any instructional error was harmless. *State v. Flores Ramos*, 367 Or 292, 478 P3d 515 (2020).

We write further to address defendant's first assignment, in which he contends that the Douglas County fingerprint record was inadmissible hearsay. For the reasons explained below, we conclude that the trial court did not err in admitting the fingerprint record and therefore affirm.

## STANDARD OF REVIEW

We use a two-part standard of review when analyzing a trial court's evidentiary ruling that a statement did or did not fit within a hearsay exception. *State v. Cook*,

---

[1] ORS 164.405 provides, as relevant:

"(1) A person commits the crime of robbery in the second degree if the person violates ORS 164.395 [robbery in the third degree] and the person:

"(a) Represents by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon; or

"(b) Is aided by another person actually present."

[2] ORS 164.045 provides, in part:

"(1) A person commits the crime of theft in the second degree if:

"(a) By means other than extortion, the person commits theft as defined in ORS 164.015; and

"(b) The total value of the property in a single or aggregate transaction is $100 or more and less than $1,000."

340 Or 530, 537, 135 P3d 260 (2006). We "will uphold the trial court's preliminary factual determinations if any evidence in the record supports them." *Id.* However, we will also review "the trial court's ultimate legal conclusion, as to whether the hearsay statement is admissible under an exception to the hearsay rule, to determine if the trial court made an error of law." *Id.* Evidentiary error only requires reversal if it is not harmless. *State v. Edmonds*, 364 Or 410, 429-30, 435 P3d 752 (2019).

## FACTUAL & PROCEDURAL BACKGROUND

On February 20, 2018, defendant, wearing a medical face mask and a baseball cap, walked into a Walgreens. He walked down an aisle, picked up a Tylenol box, and set it back down before walking over to the check-out counter. He then asked for cigarettes and a bag and instructed the cashier to "put the money in the bag" while lifting his shirt to reveal a handgun. After defendant left the store, police responded and found a Tylenol box that seemed "out of place" in the aisle that defendant was seen walking down in the surveillance video. The surveillance video also showed defendant picking something up from the shelf.

The Tylenol box was sent to the Oregon State Police Forensic Laboratory, where a forensic scientist, Priest, "processed [the Tylenol box] for latent prints" by visually examining the box for the presence of latent fingerprints, then applying superglue and fingerprint powder, and then "finish[ing] the entire process with an application of a fluorescent dye that reacts with superglue." She photographed the fingerprints that she "found" and then "uploaded [them] into a database."

After receiving a "latent print comparison request" from Priest, latent fingerprint examiner Marchant began her process of analyzing the latent prints identified by Priest to determine whether they were sufficient to compare to other prints. Marchant determined that the quantity and quality of information contained within the latent prints was sufficient for comparison purposes, and she then marked certain "features" on the latent fingerprint images and uploaded that information into Oregon's central

repository for identification records. That repository is part of a series of interconnected state, regional, and federal databases that store, analyze, and share biometric data, including fingerprint records, known as the Automated Biometric Identification System (ABIS).

Marchant queried ABIS, beginning at the state level and progressing through the databases, until the system found a potential "match" for the latent prints at the federal level. The matched print images were electronically transmitted to Marchant, along with the name and FBI number associated with those prints, and she compared those prints to the latent prints obtained from the Tylenol box. Marchant completed her analytic process, through which she developed an "investigative lead," consisting of defendant's name and FBI number, for the Roseburg Police Department. She advised the investigating detective, Kaney, of her analysis and conclusions and provided him with defendant's name and FBI number. Kaney then conducted additional investigative efforts and was later able to connect defendant to the Walgreens robbery. At that point, Kaney arrested defendant and took him into custody. A Douglas County Jail corrections deputy, Fragoso, fingerprinted defendant as part of the routine booking process at the jail. Marchant later compared those print images to the latent prints lifted from the Tylenol box and was able to identify defendant as the person who left those latent prints on the box.

## THE EVIDENCE

Marchant's testimony about her latent fingerprint analysis was key to the state's case against defendant, because it connected him to the Walgreens store that was robbed. The state called Fragoso to describe the fingerprinting process that is routinely followed during the booking process at the Douglas County Jail and to establish that he was the deputy who fingerprinted defendant as part of that routine process when he booked defendant into the jail on the charges at issue in this case. The state called Priest to describe and establish how she had processed the latent prints taken from the Tylenol box and forwarded her results to Marchant with a request for a comparison print study.

And Marchant testified about her latent print analysis and her conclusion that defendant's fingerprint was on the Tylenol box found out of place on the Walgreens shelf following the robbery.

The state presented documentary evidence concerning the fingerprints through state's exhibits 15 (photo of Tylenol bottle), 16 (Form 49-OSP Forensic Services Request), 16A (Tylenol Box), 19 (Priest's packet of notes and analytical report), 19A (Priest's hand-written notes), 21 (Marchant's analytical report), 23 (side-by-side photo of fingerprint comparison), and 33 (Douglas County Jail fingerprint record). Exhibits 15, 16, 16A, 19, 19A, and 23 were received into evidence without objection. State's exhibits 21 and 33 were received into evidence over defendant's objection. It is the trial court's receipt into evidence of exhibits 21 (Marchant's analytical report), and 33 (Douglas County Jail fingerprint record) and the associated testimony about those exhibits that defendant challenges on appeal.

When the state initially offered exhibit 21, it was a four-page document that Marchant testified was her "report dated January 10th of 2020, and [her] analytic notes supporting the conclusions in that report." Defendant objected to the report "for the same reason that the court has already ruled."[3] The state responded by removing the last three pages of the report and simply offering the first page as exhibit 21, which is the cover page of the report, and includes a description of Marchant's analysis and conclusion. Defendant objected to that modified offer, arguing that it would result in the admission of "an incomplete set of notes." He argued that "[e]ither all of the notes come in or none of the notes come in because that is the analytic work of Ms. Marchant." The court received all four pages of exhibit 21. We note that the fingerprint images on the

_____

[3] It is not clear what defendant was referring to at that point, because the state had not yet offered, and the court had not yet ruled on, the admissibility of exhibit 21. We understand defendant's reference to have been to earlier objections made to Marchant's testimony that focused on the reference to fingerprint images that she described accessing, including the first images from ABIS that allowed her to provide an "investigative lead" to the Roseburg Police Department. Exhibit 21 does not contain those fingerprint images. It does include two images from the fingerprints later obtained from defendant at the Douglas County Jail and then uploaded into the electronic system.

third page of exhibit 21 were also admitted into evidence as exhibit 23, to which defendant did not object.

Marchant identified exhibit 33 as a printout of defendant's fingerprint images taken at the Douglas County Jail that she printed after electronically accessing those images for use in her latent print analysis. Marchant "identified the latent print P3 [lifted from the Tylenol box] to the number nine left ring of [defendant]" reflected on exhibit 33. The key fingerprint images underlying Marchant's comparative analysis were, thus, the P3 latent print lifted from the Tylenol box and the images of defendant's left ring finger obtained during the booking process at the Douglas County Jail. Those images are included in exhibit 23, to which defendant did not object, and also on the third page of exhibit 21 which, as we have already noted, was added back into that exhibit at defendant's request.

The court initially ruled that exhibit 33 was hearsay, but that it was admissible under the business records exception:

> "The record was made at or near the time of the event. The record was made *** by or from information transmitted by personal knowledge and a duty to report. It is in the regular practice of business activity to make such a record. And the record is kept in the course of a regularly conducted business activity."[4]

The court later concluded that exhibit 33 was admissible under the public records exception, OEC 803(8)(b), which states that the following are not excluded by the rule against hearsay:

> "Records, reports, statements or data compilations, in any form, of public offices or agencies, including federally recognized American Indian tribal governments, setting forth:
>
> "* * * * *

---

[4] On appeal, the state only argues that the record met the requirements of the public records exception. The state concedes that the trial court erred in applying the business records exception. *See Edmonds*, 364 Or at 422 (concluding that the public records exception "controls the admission of law enforcement records"). Therefore, we address only whether the evidence was properly admitted under the public records exception.

"(b)   Matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, in criminal cases, matters observed by police officers and other law enforcement personnel[.]"

Relying on *U.S. v. Gilbert*, 774 F2d 962, 965 (9th Cir 1985), the trial court concluded that there was sufficient evidence to support applicability of the hearsay exception, notwithstanding that the public records exception expressly excludes law enforcement records.

## ANALYSIS

The parties frame the primary issue as whether the fingerprint evidence to which defendant objected should have been excluded as hearsay, or whether that evidence was excepted from application of the hearsay rule by the public records hearsay exception.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OEC 801(3). The parties do not address the question whether fingerprints are themselves "statements" for purposes of the hearsay rule. And yet that question is necessarily part of the hearsay analysis. A "statement" is "an oral or written assertion" or the "nonverbal conduct of a person, if intended as an assertion." OEC 801(1)(a) and (b). Although neither we nor the Oregon Supreme Court have specifically answered the question of whether fingerprints, either inked or digitized, printed or electronic, are statements in the context of the hearsay rule, we have referred to fingerprints in the Fourth Amendment context as "a non-testimonial record of physical characteristics," noting the importance of "allowing compilation of data that will help identify individuals who have left evidence of their identity at the scene of a crime." *State ex rel Juv. Dept. v. Orozco*, 129 Or App 148, 152, 156, 878 P2d 432 (1994), *rev den*, 326 Or 58 (1997). Indeed, we have held that fingerprinting a criminal suspect at the time of trial *to obtain evidence* that would place him at the scene of the crime did not require a search warrant. *State v. Cullop*, 19 Or App 129, 132, 526 P2d 1048 (1974). The focus in those constitutional cases was, of course, on the reasonableness of the seizure in light of the required intrusion as well as related

privacy considerations. But we see no principled reason to conclude that, as in the constitutional context, for purposes of the hearsay rule, fingerprints are anything other than nontestimonial records of physical characteristics.

Defendant did not precisely identify those aspects of the physical exhibits to which he objected that rendered them inadmissible. He did not expressly designate the fingerprint images or the identifying information—or both—and both he and the state consistently referred simply to the "fingerprint records" in the entirety of their arguments as they debated defendant's hearsay objections and the state's reliance on OEC 803(8)(b) as the applicable hearsay exception. Ultimately, in responding to the state's argument that exhibits 21 and 33 were admitted not for "their truth" but as foundation for Marchant's expert testimony, defendant replied that Marchant's opinion was entirely dependent on it being true that "the jail fingerprint record identified defendant." Defendant thus clarified his position that the hearsay statements to which he objected consisted of the fingerprint images together with the identifying information.

With that understanding, we turn to the question of whether the public records exception applies here. We note that the public records exception, OEC 803(8)(b), not the business records exception, OEC 803(6), generally "controls the admission of law enforcement records in criminal cases." *Edmonds*, 364 Or at 422. We note also that, while law enforcement records are generally excluded from the public records exception, "routine, non-adversarial matters" are not so excluded. *State v. Smith*, 66 Or App 703, 707, 675 P2d 510 (1984). Defendant argues that the public records exception does not apply, because the Douglas County Jail fingerprint record was created in the midst of an ongoing investigation and is, therefore, specifically excluded from the public records exception.

Defendant's fingerprints were taken during the routine booking process. That task did not involve the exercise of judgment by the officer taking the fingerprints.[5] The

_____

[5] We note also that a law enforcement agency is required, "[i]mmediately upon the arrest of [certain] person[s]," to provide the fingerprints and other identifying information to the Department of State Police. ORS 181A.160. The

fact that defendant was arrested, fingerprinted, and booked into the jail at some point after Marchant contacted law enforcement with an investigative lead that she developed when she matched the latent prints lifted from the Tylenol box with an existing electronic fingerprint record associated with defendant's name and FBI number did not render the routine fingerprinting at the jail nonroutine. The fingerprinting that occurs during the normal booking process is not an observation of the officer made in an adversarial process. The record is not an assertion of what the officer believes the fingerprint image is or represents. It is instead the product of a routine imaging process that records physical characteristics of the person being fingerprinted, not subject to the judgment of the involved officer. And the fact that information gained through the routine booking process is relevant to an investigation or later becomes evidence at trial does not transform the booking process into an adversarial process. The fingerprint record created in the booking process is exempt from the hearsay rule by the public records exception, because it was created as part of the usual routine that all persons being booked into the jail go through, without the exercise of discretion or judgment by the booking officer. *See Smith*, 66 Or App at 707 (As with its federal counterpart, OEC 803(8)(b) "was intended to preclude only the admission of police reports made in the course of investigation of a particular crime in lieu of the officers' in court testimony, not records of routine, nonadversarial matters."). It was, thus, not error to admit the fingerprint record into evidence.

Affirmed.

---

arresting agency must provide the fingerprints of people arrested for crimes listed in ORS 181A.165, including an arrest for "any felony," such as defendant. ORS 181A.165(1).