## STATE OF OREGON,
*Respondent,*

*v.*

## ERICK SCOTT JENSEN,
aka Steven Craig Jensen,
*Appellant.*

(C8806-34381; CA A60716)

794 P2d 448

Richard Lee Barton, Portland, argued the cause for appellant. With him on the briefs were Daniel Q. O'Dell and Barton & Loennig, Portland.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Joseph, Chief Judge, and Rossman, Judge.

ROSSMAN, J.

Joseph, C. J., concurring.

Buttler, P. J., specially concurring.

**ROSSMAN, J.**

Defendant appeals his convictions, after a trial to the court on stipulated facts, for possession of a controlled substance, ORS 475.992, and unlawful possession of a weapon. ORS 166.250. He contends that the trial court erred in denying his motion to suppress evidence found in a warrantless search of his vehicle. We affirm.

■ On June 19, 1988, Officer Larkin investigated the theft of a Muscular Dystrophy Association contribution jar from a store in Portland. The store clerk told Larkin that the thief was a thin white man in his mid-twenties, approximately 5'7" or 5'8" with brown hair. The thief was accompanied by a white female and was driving a "full sized goldish-brown or yellowish-tan vehicle, early 70's, possibly an Olds or Buick." The clerk said the car was in "rough condition" and gave Larkin the license plate number.

One week later, in a different part of town, Larkin saw a car that fit the description given by the store clerk. Defendant, the man driving the car, also matched the clerk's description and was accompanied by a man and a woman. Larkin followed the car at 20 to 25 miles per hour for two blocks, during which time he called in a request for the suspect vehicle's license plate number. Before he received the number, however, and without any signal from Larkin, defendant pulled over and got out of his car. Larkin pulled up behind the car, approached defendant and asked if he could see some identification. When defendant replied that he did not have any, Larkin asked him to take a seat in the back of the patrol car until he could ascertain whether the vehicle had been involved in the theft and whether defendant had a valid license. Shortly thereafter, Larkin asked if he could search the car. Defendant responded, "Go for it." In the car, Larkin found a small amount of tar heroin, a cigarette pack containing cocaine and a semi-automatic pistol.

On appeal, defendant contends that the drugs and gun were seized after an unlawful stop. The state responds that, by the time the encounter became a stop, Larkin had reasonable suspicion to justify it. Accordingly, the ultimate

questions are when a stop occurred[1] and whether Larkin had reasonable suspicion at that time.

■ ■    A police officer may stop a person only when he reasonably believes that the person has committed a crime. ORS 131.615(1). A stop occurs when an officer temporarily restrains a person's liberty by physical force or a show of authority. *State v. Kennedy,* 290 Or 493, 498, 624 P2d 99 (1981). "A person is 'restrained' when, in view of all circumstances, a reasonable person would have believed that he was not free to leave." *State v. Horton,* 86 Or App 199, 202, 738 P2d 609 (1987).

■■    We conclude that the initial encounter here was not a stop. Defendant pulled over and got out of his car voluntarily. Although Larkin had been following roughly a car length behind, he did not use the overhead lights or siren on his car or engage in any conduct that would have signaled defendant to stop. He simply followed defendant at the legal speed limit for two blocks. The mere act of driving a marked police car behind another car does not constitute a show of official authority sufficient to constitute a stop. *State v. Jackson,* 91 Or App 425, 428, 755 P2d 732, *rev den* 306 Or 661 (1988).

■    Larkin's request for identification did not elevate the encounter to a stop. "It is the *retention* of a license or identification card, usually for investigatory purposes, that restrains a person from leaving." *State v. Jackson, supra,* 91 Or App at 428. (Emphasis in original.) Larkin's request for defendant to sit in the patrol car, after defendant admitted that he had no identification, *did* constitute a stop. At that point, however, Larkin reasonably believed that defendant had failed to carry a license while operating a vehicle on a public highway, a violation of ORS 807.570(1)(a). Because ORS 807.570(4) allows an officer to detain a person who has violated that statute "for such time as is reasonably necessary to investigate and verify the person's identity," the stop was lawful. It was at

---

[1] The trial court apparently concluded that the stop occurred when defendant pulled over, because the case was tried on that basis. However, we are not bound by the trial court's legal conclusions. *State v. Miller,* 43 Or App 421, 424, 602 P2d 1141 (1979).

that point that defendant consented to the search of his vehicle.[2]

Affirmed.

**JOSEPH, C. J.,** concurring.

I concur *only* because defendant concedes that, if there was a lawful stop, he loses this appeal. I do not want my concurrence to be taken as reflecting any belief on my part that the request to search was lawful.

**BUTTLER, P. J.,** specially concurring.

The lead opinion decides a case that was not argued in the trial court. Defendant, in his motion to suppress, argued that he was stopped by the officer when he pulled over to the curb after the officer had followed closely behind him for several blocks. The state conceded that a stop occurred at that time but argued that the officer had a reasonable suspicion that defendant had committed the crime of theft.

The trial court, therefore, was not asked to decide *when* the stop occurred; it was asked only to decide whether the stop was supported by a reasonable suspicion. It found that it was. The evidence supports that finding. Although I might disagree with the parties and the trial court that a stop occurred at that time, the trial court did not err in concluding that the conceded stop was supported by a reasonable suspicion.

Contrary to the concurring opinion, I find no concession by defendant that, if there was a lawful stop, he loses.[1] Rather, defendant argues that, if the stop found by the trial court was valid, the officer exceeded the scope of his authority following the stop. In that, defendant is wrong. Immediately following the stop, the officer asked defendant for his driver's

---

[2] Defendant also contends that his consent to search the car was involuntary, because it was the fruit of an illegal stop. However, because we conclude that the stop was lawful, that argument lacks merit.

[1] At oral argument, most of the discussion related to the state's new-found position that the stop did not occur until defendant admitted that he had no identification and Larkin had asked him to sit in the patrol car. Defendant's attorney, in response to a question, said that if the stop was valid, he loses. The concurring opinion apparently interprets that to refer to the "stop" found by the lead opinion; I do not, because defendant's position has been consistent that the stop occurred when he pulled his car over to the curb, as the state and he agreed in the trial court.

license; defendant could not produce it or provide any identification. At that point, the officer had probable cause to believe that defendant had violated ORS 807.570 and was authorized to detain him as long as reasonably necessary to verify his identity. ORS 807.570(4). Apparently, before defendant's identity was verified, the officer, still acting on a reasonable suspicion that defendant had committed theft, asked defendant if he could search his car. Defendant consented.

Defendant does not contend that the officer did not have authority to request his consent to search. He argues only that his consent was involuntary under the circumstances. It was not.

Accordingly, I would affirm for the same reasons given by the trial court.