Argued and submitted January 6, affirmed April 22, 1998

## STATE OF OREGON,
*Respondent,*

*v.*

## VICTOR ISAAC HASSON,
*Appellant.*

## (D9700945M; CA A96949)

958 P2d 183

Carol E. Jones argued the cause and filed the brief for appellant.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

**EDMONDS, J.**

Defendant was convicted in a trial to the court of menacing after being charged with assault in the fourth degree and menacing. ORS 163.190. He appeals and assigns error to the admission into evidence of out-of-court statements made by the victim, who did not testify at the trial. We affirm.

During a pretrial hearing, the state made an offer of proof, which consisted of a tape recorded conversation between a 9-1-1 operator and the victim and the testimony of a police officer about statements that the victim made to him after he arrived on the scene. Defendant objected on the ground that both statements were inadmissible hearsay under OEC 802. The state responded that they were admissible under the "excited utterance" exception to the hearsay rule, OEC 803(2), and the trial court admitted the evidence.

The 9-1-1 tape recording lasted about 15 minutes. It recorded a telephone call to the victim while she and defendant were in a residence that they shared. The following exchange occurred during the first minute of the telephone call:

Operator: "This is 9-1-1, we just received an incomplete call from your phone number. Is there a problem there?"

Victim: "Kind of. I don't really want to talk."

Operator: "Are you in danger at this time?"

Victim: "Yes."

Operator: "Do we need to send the officers out there?"

Victim: "No."

Operator: "Okay. Well, you've given a call to 911, so we're going to need to send somebody out there to make sure that everything is okay. Are you separated from that other person right now or are they still there?"

Victim: "I hung up because he walked into the room and looked at me."

Operator: "Okay. Well . . ."

Victim: "He just tried to choke me with the phone cord."

In response to the 9-1-1 operator's questions, the victim gave defendant's name and description. Additionally, she related details about defendant wrapping the phone cord around her neck and described that incident more fully later in the recording. Throughout the tape recording, the victim expressed the fear that, while she was on the phone, defendant would come into the bedroom where she was located. Several times, she told the 9-1-1 operator that defendant was moving about the house. On one occasion, the victim said that she was on the phone, and then told the operator that defendant had just opened the bedroom door, said that he was sorry and then left the room. While waiting for the officer to arrive, the victim set the phone down and left the room temporarily to get a glass of water. At the end of the conversation, the operator told the victim that the officer had arrived and instructed her to leave the bedroom and to walk out the front door to meet him.

The officer testified that when he arrived, the victim appeared to be upset, that her body was visibly shaking and that her voice was quivering. He testified that she told him that defendant had become angry at her and that when she had walked away from him, he had wrapped and tightened a phone cord around her neck.

■ The trial court made no findings on the record but concluded that the tape recording and the officer's testimony met the requirements for the excited utterance exception to the hearsay rule. We review rulings about the admissibility of evidence of out-of-court statements under OEC 104(1).[1] *State v. Carlson*, 311 Or 201, 216, 808 P2d 1002 (1991). The state, as the proponent of the admissibility of the evidence, must show by a preponderance of the evidence that the statements were excited utterances under OEC 803(2). *Id.* Because the trial court made no findings, we presume that it

---

[1] OEC 104(1) provides, in part that "[p]reliminary questions concerning the * * * admissibility of evidence shall be determined by the court[.]"

found facts in a manner consistent with its ultimate conclusion that the statements were admissible as excited utterances. *See State v. Stonaker*, 149 Or App 728, 738, 945 P2d 573 (1997) (holding that 9-1-1 call statements satisfied the requirements of OEC 803(2)).

Defendant objected to the admission of the entire tape recording and did not distinguish among the various statements that the victim had made during the 15 minutes of the conversation.[2] Accordingly, if any one of the victim's statements contained on the tape recording meets the requirements of an excited utterance, we will affirm the trial court's ruling on the admissibility of the tape recording. *See State v. Brown*, 310 Or 347, 358-59, 800 P2d 259 (1990) (holding that an objection to evidence as a whole is insufficient when any part of the evidence objected to is admissible).

The excited utterance rule is embodied in OEC 803(2) and provides, in part:

"The following are not excluded by [OEC 802], even though the declarant is available as a witness:

"* * * * *

"(2) A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

We begin our analysis under the rule by focusing on the inculpatory statement that the victim made during the first minute of the tape. The first two requirements of the rule are met: Being choked by a phone cord is a "startling event" and the victim's statement related to that event.

---

[2] At the beginning of the pretrial hearing, defendant's attorney made the following motion:

"Before we get started, this is an Assault IV case. It is my understanding that the state does not have the alleged victim present as a witness and will be proceeding under the excited utterances exception and that they intend to call the arresting officer to testify as to her utterances. In addition, there is a 911 tape. For the record, I'm moving to exclude those statements."

After the state made its offer of proof, defendant's attorney preceded her argument with the request that, "I'd first ask that the portions of the statements that are on the tape not be made admissible." At trial, when the state offered the tape recording into evidence, defendant's attorney said, "I'll object for the reasons I've already indicated. Its hearsay."

Accordingly, the issue narrows to whether the record supports a finding that the statements were made while the declarant was under the stress of excitement caused by the event. The victim telephoned 9-1-1 and then hung up. When the 9-1-1 operator called her back and asked, "Are you separated from that other person right now or are they still there?" her nonresponsive reply was, "I hung up because he walked into the room and looked at me. * * * He just tried to choke me with the phone cord."

■■   The rationale behind the admission of excited utterances is that the "excitement caused by the startling event or condition temporarily stills the capacity for reflection and thus produces statements free of conscious fabrication." *Carlson*, 311 Or at 215. More specifically,

> "[t]he spontaneity-of-the-utterance requirement, *i.e.*, the requirement that the statement of the declarant be 'made while the declarant was under the stress caused by the event or condition,' has both a *causal* and a *temporal* dimension. The declarant's excitement must have been caused by the startling event, and the declarant's statement must have been made while the excitement persisted. Criteria that bear on the trial court's determination of the spontaneity of the utterance are 'lapse of time, place, content of the utterance, physical or mental condition of the declarant, whether made in response to an inquiry, and presence or absence of a motive to fabricate.' " *Id*. at 218. (Emphasis in original; citations omitted.)

In this case, the evidence permitted the trial court to infer that the statement was made while the victim was under the stress of the excitement of the event and was caused by it. The statement was made shortly after the startling event and near the place where it occurred. Additionally, there is evidence that the victim was frightened when she made the statement because she hung up the phone after she called 9-1-1, and the statement was made only after the 9-1-1 operator called her back. Perhaps most persuasive in that regard is the evidence that the victim blurted out the statement that defendant had tried to choke her in response to a question from the operator about whether she was "separated" from the other person and not in response to a question about what had happened.

■ Defendant argues that there is evidence in the record that suggests that the victim had a motive to fabricate her statement about defendant choking her. That evidence consists of defendant's testimony at the pretrial hearing that the victim had stolen from him in the past when he was away from the residence, and that he had asked her to move out of the residence that they shared. We view the record consistently with the reasonable credibility choices that the trial court could have made. *Carlson*, 311 Or at 214. At the hearing, the state impeached defendant's credibility with evidence that he had previously been convicted of a felony. Therefore, the trial court was not required to believe his testimony.

■ Under our standard of review, the trial court's implicit finding that the victim's statement was made while she was under the stress of the excitement caused by the event is supported by a preponderance of the evidence in the record. Consequently, we hold that the trial court did not err in admitting the initial portions of the tape recording. Because defendant made no specific objection about any of the other statements on the recording, the court's ruling allowing the admission of the entire tape recording was not error.

■ Our review of the record regarding the officer's testimony about statements that the victim made to him discloses no material information that was not also on the tape recording. In view of our holding regarding the admission of the entire tape recording, we hold that, even if the out-of-court statements to the officer were inadmissible hearsay, there is little likelihood that the admission of that evidence affected the verdict. Therefore, any error was harmless.

Next, defendant argues that the admission into evidence of the victim's out-of-court statements violated his right to "meet the [witness] face to face," Article I, section 11, of the Oregon Constitution, and his right "to be confronted with the witnesses against him." US Const, Amend VI. He contends that the "unavailability" of a witness is a preliminary fact question under OEC 104(1) that must be determined as a part of the foundation for the admission of an excited utterance. The state responds that defendant failed

to preserve the error that he assigns on appeal under ORAP 5.45(2), and therefore, the assignment should not be considered.

Defendant argued to the trial court as follows:

"I'd ask the court to consider [defendant's] Sixth Amendment right to confront witnesses. I see this as a pretty serious exception to the hearsay rule when the main witness, and really the only accuser of [defendant] is not present to testify, not present for me to cross-examine. And I don't think the excited utterance — allowing statements in under the excited utterance exception is appropriate *unless the court can really clearly find that I could benefit — could not benefit, [defendant] could not benefit from my being able to cross-examine this witness.* And considering all the factors, it would just, it just seems like a huge stretching of the rule." (Emphasis supplied.)

We agree with the state that the assigned error was not preserved. Defendant did not ask the trial court to require that the state demonstrate that the witness was unavailable before admitting her hearsay statements. Rather, he asserted that his Sixth Amendment right to confront the victim existed unless the court found that he could not benefit from cross-examination of the victim. That assertion raises a different issue from the one that he raises on appeal. Had he raised the issue of the unavailability of the witness to the trial court, it would have had the opportunity to rule on whether such a showing on the part of the state is required. Moreover, the state would have had the opportunity to make the required showing. Accordingly, we decline to address defendant's unpreserved assignment of error.

Affirmed.