68 March 19, 2025 No. 231

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CASEY ALEXANDER SERINI,
aka Casey Serini,
*Defendant-Appellant.*

Washington County Circuit Court
23CR01078, 22CR41267;
A181477 (Control), A181478

Erik M. Bucher, Judge.

Submitted October 22, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Joshua B. Crowther, Chief Deputy Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Stacy M. Chaffin, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

Defendant appeals a judgment of conviction for criminal driving while suspended, ORS 811.182(4). He contends that the trial court erred by (1) denying his motion to suppress evidence, and (2) overruling his objection to the admission of Exhibit 1, a set of documents from the Driver and Motor Vehicle Services Division of the Department of Transportation (DMV) described as a "suspension packet." We conclude that the court did not err in denying the motion to suppress, because defendant was not unlawfully seized at the relevant point in time, and that the court did not err in admitting Exhibit 1, because defendant made a general objection to the entire packet but at least some of the statements contained therein were admissible. Accordingly, we affirm the judgment in Case No. 23CR01078. We also affirm the probation revocation judgment in Case No. 22CR41267, as defendant has not assigned error to any rulings in that case.

## MOTION TO SUPPRESS

We review the denial of a motion to suppress for legal error. *State v. Maciel-Figueroa*, 361 Or 163, 165, 389 P3d 1121 (2017). We are bound by the trial court's factual findings if there is evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). In the absence of express findings, we generally assume implicit findings consistent with the court's conclusions. *Id.* The following facts, so stated, are based on the evidence admitted at the suppression hearing.

On the evening of December 17, 2022, a police officer on patrol noticed a black Volkswagen Jetta with tinted windows on the road. Based on prior contacts, the officer suspected that defendant, who had a suspended license, was driving the vehicle. The officer confirmed with dispatch that defendant's license was still suspended as he turned to follow the Jetta. The officer was driving an unmarked police car. He drove behind the Jetta for three blocks on the main road, then followed as it took two right turns into a residential neighborhood. Immediately after taking the second right turn, the Jetta pulled to the side of the road. The

officer had not activated any overhead lights or otherwise signaled for it to stop. The officer pulled over and parked behind the Jetta, at which point he could see defendant's face in the driver's side mirror and recognized him.

As shown on the officer's bodycam, the officer then approached the Jetta on foot. The driver's window was down. The officer told defendant that he was being stopped for driving with a suspended license. Defendant asked whether it was "a traffic stop." The officer responded, "It is [a] traffic stop now. You're not free to go."

Defendant was charged with criminal driving while suspended, ORS 811.182(4). He moved pretrial to suppress evidence, asserting that he was unlawfully seized because the officer stopped him without reasonable suspicion that he was driving while suspended. The trial court denied the motion. It found that, even if defendant opted to pull over in response to the officer following him, the officer did not activate his lights, direct defendant to stop, use force, or otherwise make a show of authority. Based on its findings, the court concluded that defendant was not seized when he pulled over. The court further found that the officer saw defendant's face in the side mirror when he parked behind the Jetta, at which point he developed reasonable suspicion of the crime of driving while suspended. It was only then, after developing reasonable suspicion, that the officer approached on foot and seized defendant.

On appeal, defendant again argues that he was already seized by the time the officer parked behind him and that such seizure was unlawful because the officer had not yet seen his face and therefore lacked reasonable suspicion of a crime. Specifically, defendant argues that the officer unlawfully seized him by following him for several blocks then parking behind him. Defendant contends that, although unmarked, the officer's car was recognizable as a police car due to its having push bars on the front grill, bars on the rear windows, and a visible on-board mobile computer. Defendant also points to evidence that he changed his course of travel—turning off the main road later than he intended—because of the officer following him. In defendant's view, a reasonable person in his position would

understand themselves to be the subject of a criminal investigation and not feel free to leave.

In response, the state agrees that the officer did not have reasonable suspicion of a crime until he saw defendant's face and recognized him. However, it argues that the trial court correctly denied the motion to suppress, because, prior to seeing defendant's face, the officer did not do anything that would convey to a reasonable person that they were required to stop or were not free to leave. We agree with the state.

Article I, section 9, of the Oregon Constitution protects individuals from unreasonable searches and seizures. Or Const, Art I, § 9 ("No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search[.]"). Not all interactions with the police implicate that constitutional protection. There are three general categories of interactions with the police—mere encounters, stops, and arrests—the first two of which are relevant here. *State v. Leiby*, 293 Or App 293, 296, 427 P3d 1141 (2018). Mere encounters do not require constitutional justification; police officers may approach individuals in public places, seek their cooperation, and request information. *State v. Backstrand*, 354 Or 392, 400, 313 P3d 1084 (2013). By contrast, when an officer restrains a person's liberty through physical force or a show of authority, the interaction becomes a stop, which is a type of seizure and thus requires constitutional justification, such as reasonable suspicion of a crime. *State v. True*, 324 Or App 621, 625, 527 P3d 42, *rev den*, 371 Or 477 (2023). A person is seized when a police officer intentionally and significantly interferes with their liberty or freedom of movement, or when a reasonable person, under the totality of the circumstances, would believe that their liberty or freedom of movement has been significantly restricted. *State v. Ashbaugh*, 349 Or 297, 316, 244 P3d 360 (2010).

Defendant relies on *Leiby* to argue that he was stopped by the time that the officer parked behind him. In *Leiby*, an officer driving a marked patrol car pulled alongside a car driven by the defendant. 293 Or App at 294. The officer made eye contact with the defendant, who made a

facial expression indicating that he recognized him as a police officer. *Id*. The defendant abruptly turned off the roadway into a parking lot. *Id*. The officer turned into a nearby parking lot and circled so that he could see the defendant's vehicle, followed him back onto the road when he reentered the roadway, then followed him into another parking lot. *Id*. at 294-95. At that point, the defendant stopped his car, and the officer parked and approached on foot. *Id*. at 295. The officer's first words were, "Is there any reason or do you want to tell me why you're trying to avoid me?" *Id*. We held that the defendant was seized in those circumstances. *Id*. at 299. Despite his obvious efforts to avoid contact, the officer engaged in a "dogged pursuit" that was reasonably perceived as coercive and reasonably understood to significantly interfere with the defendant's liberty or freedom of movement. *Id*. at 297-98.

The circumstances here are not comparable. Here, the officer was driving an unmarked car, did not do anything to catch defendant's eye or signal that he was a police officer, and followed defendant for a short distance on public roads. That is significantly different from doggedly following someone on and off the roadway through multiple parking lots in a marked police car while they obviously try to avoid contact. Even assuming that a reasonable person in defendant's position would have recognized the vehicle behind him as an unmarked police car, it does not follow that a reasonable person in defendant's position would have felt coerced against their will to pull over and interact with the officer, at least at the point that defendant pulled over. The distinctive features of the officer's unmarked car might have alerted defendant to the fact that he had attracted police attention, but that alone is not enough to constitute a stop.

This case is more analogous to *State v. Jensen*, 102 Or App 323, 794 P2d 448 (1990), and *True*. In *Jensen*, a police officer in a marked car followed a vehicle driven by the defendant for two blocks on a public roadway, at which point the defendant pulled over and got out of his vehicle, and the officer pulled over and did the same. 102 Or App at 325. The officer had not activated his overhead lights or

done anything else to signal the vehicle to pull over. *Id.* at 326. We held that the defendant was not seized, because the "mere act of driving a marked police car behind another car does not constitute a show of official authority sufficient to constitute a stop." *Id.*

In *True,* a sheriff's deputy was driving a marked patrol car and looking for the subject of a recent driving complaint. 324 Or App at 622. Upon seeing the defendant's truck, he turned around, passed two cars, and drove directly behind the truck for about two miles on a public road. *Id.* at 623. The deputy did not witness any traffic infractions and did not activate his overhead lights. *Id.* It was unclear from the record whether the defendant noticed that the deputy was following him. *Id.* at 626. When the truck pulled off the road and entered the drive-through of a McDonald's restaurant that the deputy knew was closed, the deputy pulled into the same parking lot and parked about 50 feet away. *Id.* at 623. He approached the truck on foot, identified himself to the defendant, said that he was not stopping him, and asked some questions. *Id.* at 623-24. The defendant gave incriminating answers, which led the deputy to initiate a stop. *Id.* We held that the deputy did not seize the defendant by following him on the road and into the McDonald's parking lot or during the initial questioning. *Id.* at 626-27.

Here, defendant was not seized when a police officer drove behind his vehicle in an unmarked car for a few blocks on public roadways, without activating any overhead lights or doing anything to signal defendant to stop. The car having some distinctive features that might make it recognizable as an unmarked police car does not change that fact, nor does the officer taking two turns that might have tipped defendant off to the fact that the officer was purposefully staying behind him. As for the officer stopping when defendant stopped and parking behind him on the side of the road, it was defendant's choice to stop—it was not the result of any coercion by the officer—and there was no reason that the officer could not then stop to talk to him. In other words, defendant's choice to stop did not mean that the officer was required to keep driving and that any effort to interact with defendant at that point would amount to a seizure.

The trial court did not err by denying the motion to suppress.

## DMV RECORDS

Defendant next challenges an evidentiary ruling at trial. Because he waived his right to a jury, the charge of criminal driving while suspended was tried to the court. To prove that charge, the state had to show that defendant drove a motor vehicle on a public highway on December 17, 2022, while his driving privileges were suspended or revoked by the Department of Transportation for one of the reasons in ORS 811.182(4). ORS 811.175; ORS 811.182(4). Notably, the state was required to prove "the existence, but not the validity, of the suspension of the defendant's driving privileges." *State v. Rust*, 240 Or App 749, 753, 248 P3d 445 (2011).

As part of its case, the state offered into evidence Exhibit 1, which it described as "the DMV suspension packet." Each page was stamped and signed by a DMV employee to certify that it was a true and correct copy of the original. Although neither the parties nor the trial court discussed the various documents included in the packet when it was offered, we briefly describe them here. The first document is a "certified court print" of defendant's driving record, which includes basic identifying information (name, birthdate, address, license number), a list of current licenses, the current status of all licenses, the issuance history for all licenses, a list of convictions for driving violations, and a list of "withdrawals" that includes suspensions. The second document is a "Notice of Suspension or Revocation (For Conviction of a Traffic Crime)" dated October 24, 2022, which appears to be a preprinted DMV form that was completed and signed by a circuit court judge. The third document is a "Corrected Notice of Suspension" dated November 22, 2022, which is in the form of a letter addressed from DMV to defendant, and which provides a corrected end date for defendant's license suspension.[1] The fourth document is a certified mail receipt dated December 1, 2022, signed by defendant. The fifth document is a DMV hardship permit

---

[1] The date that defendant was alleged to have driven while suspended—December 17, 2022—fell within the suspension date range in both the original notice of suspension and the corrected notice of suspension.

issued to defendant, valid January 25, 2023 to October 24, 2023, with stated requirements and conditions.

Defendant objected to Exhibit 1 on "hearsay" and "confrontation" grounds. He did not detail his hearsay objection, stating only that "these statements"—by which he appears to have meant statements in the packet regarding his license suspension—were being offered for the truth of the matter asserted and were therefore hearsay. He then discussed his confrontation objections at length, mostly discussing case law that he felt supported his position that admission of DMV records without a DMV witness to cross-examine would violate his state and federal confrontation rights.

The court asked defendant if his position was that, in every driving-while-suspended case, DMV records are inadmissible unless the state calls a DMV witness to testify about them. Defendant answered yes. The trial court overruled the objection, stating, "This is a certified DMV record. It's admissible, and we're receiving it."

On appeal, defendant contends that it violated his confrontation right under Article I, section 11, of the Oregon Constitution for the trial court to admit the hearsay statements in Exhibit 1 without requiring a DMV employee to testify at trial and be subject to cross-examination regarding them.[2] The state responds that the entirety of Exhibit 1 was admissible under the official records exception to the hearsay rule, OEC 803(8), and that its admission did not trigger defendant's confrontation right because the statements therein were not "witness" statements under Article I, section 11. We review for legal error. *State v. Kini*, 305 Or App 833, 835, 473 P3d 64 (2020).

As a preliminary matter, we note that the state offered the suspension packet as a single exhibit, defendant objected to it in its entirety, and the trial court ruled on it in its entirety. "[W]hen evidence is offered as a whole and an objection is made to the evidence as a whole and is overruled, the trial court will ordinarily not be reversed on appeal *if any portion of the offered evidence was properly*

_____

[2] Defendant no longer makes a federal constitutional argument.

*admissible*, despite the fact that other portions would not have been admissible had proper objections been made to such portions of the offered evidence." *State v. Brown*, 310 Or 347, 359, 800 P2d 259 (1990) (emphasis added; internal quotation marks omitted); *see also State v. Camarena*, 344 Or 28, 33 n 3, 176 P3d 380 (2008) ("remind[ing] both bench and bar" of that principle in a case in which the defendant raised only general objections to certain evidence based on the state and federal confrontation clauses); *State v. Martinez*, 275 Or App 451, 460, 364 P3d 743, *rev den*, 358 Or 611 (2015) (that principle applies to both testimony and exhibits).

For example, in *State v. Hasson*, 153 Or App 527, 531, 958 P2d 183 (1998), the state offered into evidence a 15-minute recording of a 9-1-1 call, the defendant objected on hearsay grounds, and the trial court admitted it under the excited utterance exception to the hearsay rule. On appeal, we explained that, because the defendant "objected to the admission of the entire tape recording and did not distinguish among the various statements that the victim had made during the 15 minutes of the conversation[,]" we would affirm the trial court's ruling "if any one of the victim's statements contained on the tape recording meets the requirements of an excited utterance." *Id*. We then concluded that "the initial portions of the tape" were admissible as excited utterances. *Id*. at 533. "Because [the] defendant made no specific objection about any of the other statements on the recording, the court's ruling allowing the admission of the entire tape recording was not error." *Id*.

The question before us, then, is whether any of the out-of-court statements in Exhibit 1 were properly admissible under the hearsay exception in OEC 803(8) without violating defendant's confrontation right under Article 1, section 11, such that the trial court did not err in overruling defendant's general objection to the entire exhibit.[3]

---

[3] We note that defendant does not dispute that the trial court relied on the official records exception in OEC 803(8) in admitting Exhibit 1. Defendant's arguments both below and on appeal have focused almost entirely on the confrontation issue, without any discussion of hearsay exceptions. On appeal, the only hearsay exception even mentioned in defendant's opening brief is OEC 803(8), the state's answering brief makes clear that it understands the trial court to have relied on OEC 803(8), and no reply brief was filed to contest that position. We therefore accept the parties' understanding of the court's ruling.

We understand Exhibit 1 to have been offered and received as evidence that defendant's license was suspended on December 17, 2022, and perhaps also as evidence that no hardship permit was in effect on that date, so we focus on statements relating to those issues. Exhibit 1 contains out-of-court statements by DMV through its employees that defendant's license was suspended from October 24, 2022 to October 24, 2023, and that defendant's only hardship permit was valid from January 25, 2023 to October 24, 2023. Those statements were offered for their truth and, thus, were hearsay. *See* OEC 801(1), (3) (a hearsay statement includes any "oral or written assertion[,]""other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"); *see also State v. Bowman*, 373 Or 213, 231, ___ P3d ___ (2025) (so reading OEC 801).

Hearsay is generally inadmissible under OEC 802. However, the legislature has deemed some hearsay sufficiently reliable for admission, regardless of witness availability, including certain official records. OEC 803(8) provides:

"The following are not excluded by [OEC 802], even though the declarant is available as a witness:

"* * * * *

"(8) Records, reports, statements or data compilations, in any form, of public offices or agencies, including federally recognized American Indian tribal governments, setting forth:

"(a)   The activities of the office or agency;

"(b)   Matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, in criminal cases, matters observed by police officers and other law enforcement personnel;

"(c)   In civil actions and proceedings and against the government in criminal cases, factual findings, resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness; or

"(d)   In civil actions and criminal proceedings, a sheriff's return of service."

That exception is described as the "official records" or "public records" exception to the hearsay rule. *See, e.g., State v. Edmonds,* 364 Or 410, 422, 435 P3d 752 (2019) ("the official records exception in OEC 803(8)(b)"); *State v. Copeland*, 353 Or 816, 841, 306 P3d 610 (2013) ("the official records hearsay exception, OEC 803(8)"); *State v. Cantwell*, 324 Or App 8, 15, 524 P3d 523, *rev den*, 371 Or 106 (2023) ("the public records exception, OEC 803(8)(b)").

Under OEC 803(8), the statements in defendant's official driving record regarding the dates that his license was suspended and the statements in defendant's hardship permit regarding the dates that the permit was in effect were admissible as official records of a public agency setting forth agency activities. Indeed, we understand defendant to no longer contest that Exhibit 1 was properly admissible under OEC 803(8) over a general hearsay objection.[4] *Cf. Rust*, 240 Or App at 751 (accepting the defendant's concession that his DMV driving record was admissible under the official records exception to the hearsay rule).

The real dispute is the confrontation right. Defendant contends that admitting Exhibit 1 without requiring the testimony of a DMV employee violated Article I, section 11, because the exhibit consists of "witness" statements. The state disagrees and argues that none of the statements in Exhibit 1 qualify as "witness" statements.

Because defendant made only a general confrontation objection, we do not evaluate *every* statement in every document included in Exhibit 1 for confrontation purposes. We again limit our discussion to the statements in defendant's official driving record regarding the dates that his license was suspended and the statements in the hardship permit regarding the dates that it was in effect—which, in this case, are really the only parts of Exhibit 1 that were relevant to proving the charged crime. We conclude that those statements do not qualify as "witness" statements and that the state was therefore not required to produce a DMV

---

[4] Given the posture of this case, we need not address whether *every* statement in every document included in Exhibit 1 was admissible under OEC 803(8), as the state contends, or whether some statements might fall outside the exception in OEC 803(8).

witness to testify regarding them. It follows that the trial court did not err in admitting Exhibit 1 over defendant's general confrontation objection.

Under Article I, section 11, a criminal defendant has the right "to meet the witnesses face to face," which is why out-of-court statements made by a declarant who does not testify at trial are generally inadmissible, unless the declarant is unavailable and the statements meet certain standards of reliability. *State v. Supanchick*, 354 Or 737, 753, 323 P3d 231 (2014). But some out-of-court statements are not considered "witness" statements for purposes of Article I, section 11.

As relevant here, under the "official records doctrine," an out-of-court statement by a public official that is "confined to matters that the officer is bound by administrative duty to report" and that does "not include investigative or gratuitous facts or opinions" is not considered a "witness" statement for purposes of Article I, section 11. *Copeland*, 353 Or at 839. The official records doctrine "dates back in criminal cases to at least the eighteenth century in England." *Id.* at 833. A qualifying statement may be admitted through documentary evidence, without accompanying testimony, without violating the defendant's confrontation right. *Id.* Thus, for example, in *Copeland*, admission of a deputy sheriff's certificate of service of a restraining order did not violate the defendant's confrontation right, because it was an official record created pursuant to a statutory duty that did not contain any investigative or gratuitous facts or opinions. *Id.* at 840-41. By contrast, in *State v. Birchfield*, 342 Or 624, 157 P3d 216 (2007), it violated the defendant's confrontation right to admit a laboratory report that contained investigative facts and opinions regarding suspected criminal activity.

In this case, DMV is a public agency that has a statutory duty to maintain driving records, including records of suspended licenses and issued permits. *See* ORS 802.200 (enumerating records that the Department of Transportation must maintain); ORS 802.200(8) (requiring that records be kept of all driver licenses and permits issued); ORS 802.200(8)(d) (requiring that records be kept of all suspended licenses);

ORS 802.200(9)(c) (stating requirements for content of non-employment driving records); ORS 807.240 (providing for issuance of hardship permits). Statements in DMV records regarding the dates of defendant's suspension and the dates of his hardship permit therefore qualify as matters that DMV is bound by administrative duty to report, and those statements themselves do not contain any investigative or gratuitous facts or opinions.

To the extent that *other* statements contained in Exhibit 1 might be subject to challenge as investigative or gratuitous, that is not a basis for reversal on appeal, given defendant's general objection to the entire exhibit. There is only one out-of-court statement in Exhibit 1 as to which defendant arguably preserved an individual challenge, which is a statement in the corrected notice of suspension explaining why the suspension end date was corrected. It is unlikely that the state intended that particular statement to be considered at all, let alone considered for its truth, given that it was factually and legally irrelevant. *See Rust*, 240 Or App at 753 (for purposes of ORS 811.182, the state must prove "the existence, but not the validity, of the suspension of the defendant's driving privileges"); *State v. Jones*, 223 Or App 70, 83, 195 P3d 78, *adh'd to as modified on recons*, 224 Or App 451, 199 P3d 317, *rev den,* 346 Or 184 (2008) (holding that "DMV's order suspending defendant's driving privileges was not subject to collateral attack in his prosecution" for driving while suspended). In any event, any error in admitting that statement was harmless, as it "played no role in defendant's conviction." *State v. Davis*, 211 Or App 550, 556, 156 P3d 93 (2007).

Affirmed.